[Crim. No. 8539.   Second Dist., Div. Three.   July 17, 1963]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  CHESTER
NELSON,  Defendant  and  Appellant.

David Daar, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—The defendant Nelson and Virginia Marie Thomas were accused of the crime of violation of section 11530.5 of the Health and Safety Code.[1] It was further alleged that the defendant Nelson had suffered a prior conviction of the crime of violation of section 11500 of the Health and Safety Code, a felony, and had served a term of imprisonment therefor in the state prison. When the matter came on for trial, each defendant waived trial by jury. The defendant Thomas was acquitted. The defendant Nelson, who was represented by the public defender, was found guilty and the allegation as to the prior conviction of a felony was found to be true. Probation was denied. It was adjudged that the defendant Nelson be punished by imprisonment in the state prison. He has appealed from the judgment.

---

[1] Section 11530.5 of the Health and Safety Code is in part as follows: "Every person who possesses for sale any marijuana except as otherwise provided by law shall be punished by imprisonment in the state prison for not less than two years nor more than 10 years, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than two years in prison."

A résumé of the evidence which is relevant on this appeal will be given. W. E. Loeber, Jr., a police officer for the City of Los Angeles assigned to the narcotics division, testified that about 11 o'clock on the morning of February 15, 1962, he went to an apartment building with two other police officers and an agent of the United States Customs Service. He knocked on the door of apartment 208, and the door was opened by defendant Thomas. Officer Loeber showed her his badge and said that he was a police officer. He stated that they would like to talk to her. The defendant Thomas said, "Come in." Officer Loeber told her that the officers knew that she "and her boy friend were selling narcotics from this room." She said that that was not true. She was then asked if she would "mind" if the officers searched the premises. She replied, "No, go ahead."

The officers made a search of the apartment. In a cabinet in the kitchen Officer Loeber saw a brown package that appeared to be in brick form. He opened one corner of the package and ascertained that it contained a brown leafy substance.

Officer Loeber testified that there was a noise at the door while the officers were in the apartment. The officers opened the door and saw the defendant Nelson and another man in the hall. Nelson had a bag of groceries in his arms. The officers told the two men to come into the apartment. Upon inquiry being made, Nelson said that he and the defendant Thomas lived there. He was placed under arrest. On cross-examination, however, after his attention had been directed to his testimony at the preliminary examination, Officer Loeber testified that he believed that Nelson was told that he was under arrest while he was still in the hallway of the building. This occurred after he had been asked if he was "Chester" and had answered that he was. At that point in his testimony, Officer Loeber said that in talking to the defendant Thomas initially, he made reference to her "boy friend." He further testified as follows: "Q. Where did the word 'Chester' come from? A. As I recall, there were letters and papers in the apartment that had the name Chester Nelson on them." In a statement, which Officer Loeber testified was made freely and voluntarily, Nelson said that the package found by the officers in the kitchen belonged to him.

Further statements were freely and voluntarily made by the defendant Nelson at the police building. He said that the kilo brick of marijuana and the other items were what

remained of 37 pounds that had been buried for some time. He took the marijuana from its hiding place and began to "deal it off" to a few friends in can and half-can amounts. Officer Loeber testified that marijuana in the form of a brick such as he found is called a "kilo brick" and that packing marijuana in that manner "is a common method used by a wholesaler in selling marijuana to a retailer, or a subseller." He further testified as follows: "A can is a quantity of marijuana equal approximately to that amount which could be put into the standard size tobacco can or Prince Albert can is a more familiar term, and this is used as a measuring device."

It was stipulated that William King was an expert forensic chemist and that it could be deemed that he had testified that he had examined the material which was in brick form and had arrived at the opinion that it was marijuana.

The defendant Thomas testified in her own behalf. She stated that she did not know that the marijuana was in the apartment at the time when the officers found it. Nelson had rented the apartment about two months before the arrest, and she had moved in with him at that time. The marijuana did not belong to her.

The defendant Nelson testified in his own behalf. He said that any marijuana which the officers found in the apartment did not belong to him. He did not know that any marijuana was there. He also testified that he had moved out of the apartment in January 1962. Some of his clothes and other property, however, were still there.

■■ The defendant Nelson complains that both at the preliminary examination and at the trial his counsel was not permitted to question Officer Loeber as to the information which the officers had before entering the apartment that persons living there had been selling narcotics. Since there was no need to establish probable cause under the facts of this case, no purpose would have been served by such inquiry. (*People* v. *Burke*, 47 Cal.2d 45, 48-49 [301 P.2d 241]; see *People* v. *Faulkner*, 166 Cal.App.2d 446, 448 [333 P.2d 251].) The testimony of Officer Loeber was sufficient to sustain a finding by the trial court that the entry into the apartment and the subsequent search were made with the consent, freely given, of Virginia Marie Thomas who appeared to be an occupant of the premises. If someone with apparent authority consents to an entry by officers into a place of residence, and the entry is made in good faith, it is not unlawful. (*People*

v. *Howard,* 166 Cal.App.2d 638, 651 [334 P.2d 105].) A search thereafter made in good faith pursuant to consent freely given by such an occupant does not constitute a violation of constitutional rights. (*People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].) The evidence in the present case gave substantial support to the determination of the trial court that the rights of the defendants had not been infringed.

When the defendant Nelson appeared at the door carrying a bag of groceries, the officers could reasonably infer under the circumstances then existing that he was the "boy friend" of Virginia Marie Thomas and occupied the apartment with her. In view of what the officers had found in the apartment his arrest was lawful. (See *People* v. *Ingle,* 53 Cal.2d 407, 412-414 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Boyd,* 173 Cal.App.2d 537, 539 [343 P.2d 283] ; *People* v. *Soto,* 144 Cal.App.2d 294, 300 [301 P.2d 45].)

The determination just expressed is not affected by the defendant Nelson's contention that there was insufficient proof that anything found at the apartment was marijuana. It is true that the stipulation made at the preliminary hearing as to an examination by the forensic chemist referred to the date of February 17, 1962, while the date mentioned in the stipulation made at the trial was February 16, 1962. But the important fact was that there had been such an examination, regardless of whether it occurred on one of the days rather than the other. The defendant is not free to challenge on this appeal the stipulation which was made in the trial court by his counsel in his presence and hearing and as to which he remained silent. (See *People* v. *Melgoza,* 183 Cal. App.2d 600, 602 [7 Cal.Rptr. 82].) His position is not strengthened by the fact, to which he directs this court's attention, that a stocking was with the exhibits when they were produced at the trial. As Officer Loeber noted, the stocking bore a notation indicating that it was an exhibit in another case. It was a reasonable inference that by inadvertence it had been placed with the articles which pertained to the present case.

The defendant Nelson asserts that this court erred in denying his motion to augment the record on appeal by including therein the transcript of the preliminary examination. In support of his position he has transmitted to this court his copy of that transcript. We find nothing therein which could aid him on this appeal. Insofar as that tran-

script was used for impeachment purposes, the reporter's transcript of the proceedings at the trial furnishes a sufficient record.[2]  There was no error.  (See *People* v. *Diaz,* 153 Cal.App.2d 572 [314 P.2d 756].)

The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

[2]In his brief filed prior to the appointment of counsel for him, the defendant Nelson states: ''The preliminary transcript is inclosed herein to support appellant's contention, that the People's witness was in fact impeach[ed] as to the fundamental question of 'reasonable or probable cause' for the alleged search and arrest, all of which were made without a 'Search Warrant' or a 'Warrant of Arrest.' ''