442 P.2d 113

**The STATE of Arizona, Petitioner,**

v.

**PIMA COUNTY SUPERIOR COURT, the Honorable Robert O. Roylston; the Pima County Sheriff Waldon V. Burr; and the real parties in interest, Anthony G. AT-WOOD and Rachel Hedwig Atwood, also known as Rachel Voyles, Respondents.**

**No. 9110.**

Supreme Court of Arizona, In Banc.

June 19, 1968.

Rehearing Denied June 25, 1968.

370

William J. Schafer, III, Pima County Atty., Tucson, for petitioner.

Benjamin W. Lazarow, Tucson, for defendant Anthony Gardner Atwood.

John J. Flynn, Phoenix, for Rachel Hedwig Atwood, aka Rachel Voyles.

McFARLAND, Chief Justice:

This is an application filed by the Pima County Attorney in behalf of the State of Arizona for a writ to review the action of Robert O. Roylston, Pima County Superior Court Judge, sitting as a committing magistrate, in postponing the preliminary hearing of the defendant, Anthony Gardner Atwood, hereinafter referred to

as defendant, and the co-defendant, Rachel Atwood, also known as Rachel Voyles, hereinafter referred to as co-defendant, and to prohibit the magistrate from further postponing the preliminary hearing in this matter, and to compel the Pima County Superior Court "to go ahead with the preliminary examination as to each of the defendants," or to order the Pima County Sheriff to deliver defendant Anthony Atwood for the completion of his preliminary hearing. It was also requested in the application that the preliminary hearing of co-defendant Rachel Atwood be delayed pending the outcome of this application, but the state failed to show cause why the preliminary hearing should be postponed as to Rachel.

We therefore granted a peremptory writ of mandamus to compel the completion of the preliminary hearing as to co-defendant Rachel and an alternative writ of mandamus for Judge Roylston as committing magistrate to proceed with or show cause why he should not proceed with the preliminary hearing against defendant Anthony Atwood.

The record reveals that complaints were filed against defendant and co-defendant, charging each of them with the crime of murder. On October 4, 1967, prior to the preliminary hearing before the magistrate, a motion for an examination of defendant's mental condition, under Rule 250, Rules of Crim.Proced., 17 A.R.S., was filed and was denied by the court. Also, a motion was then made for an order based on the inherent power of the court to hold a hearing to determine whether defendant was mentally competent to understand the proceedings against him and to assist his counsel in his defense, which was also denied on the basis that the committing magistrate did not have jurisdiction to order such a hearing. Witnesses were then sworn and examined. At the close of the state's case, counsel for defendant moved for a postponement for good cause under Rule 20, Rules of Crim.Proced., 17 A.R.S., and renewed his motion made prior to the preliminary hearing on the grounds that defendant could not understand the proceedings and was not able to conform with Rule 24, Rules of Crim.Proced., 17 A.R.S.[1], in any of the proceedings.

The magistrate then granted defendant a hearing to determine if good cause existed to grant a postponement. At the hearing held on October 10, Dr. Robert S. Cutts testified that defendant was unable to understand the nature of the proceedings or the charges against him, and was unable to assist in his own defense, at which time the magistrate found there was good cause for a postponement of the preliminary hearing, and granted defendant's motion under Rule 20, supra, and on the motion of the county attorney the proceedings were also ordered postponed as to the co-defendant to give the county attorney time to file his application for an extraordinary writ in this Court.

On October 11, a civil petition was filed in the Superior Court of Pima County, alleging that defendant was mentally ill, and asking that he be committed to the Arizona State Hospital. After a hearing before Judge Robert O. Roylston of the Superior Court of Pima County, Anthony Gardner Atwood was adjudged mentally ill, and it was ordered that he be confined to the Arizona State Hospital at Phoenix, Arizona, until sufficiently restored to reason or otherwise discharged according to law.

█ The first issue to be determined is whether it was proper for the magistrate

---

1. Rule 24. Statement by defendant
 When the examination of the witnesses for the state is closed, the magistrate shall inform the defendant:
 1. That he may make a statement, not under oath, regarding the charge against him.
 2. That he is accorded such right in order to enable him, if he wishes, to answer the charge and to explain the facts appearing against him.
 3. That he may refuse to make any statement and that such refusal may not be used against him at the trial, but that if he makes such statement whatever he says may be given in evidence against him at the trial.

to order a postponement of the preliminary hearing under Rule 20, Rules of Crim. Proced., 17 A.R.S., based on a hearing for good cause where defendant presented evidence that he was unable to understand the nature of the proceedings, or charges against him, and was unable to assist in his defense. The function of the committing magistrate at a preliminary hearing is to determine whether there is probable cause that defendant committed the offense charged in the complaint; if he so finds bind him over to the Superior Court for trial; and if not release him.

■■■■ The state contends that a committing magistrate has no authority to order a hearing under Rule 250, supra. With this we agree. It is immaterial that a superior court judge was acting as a committing magistrate, as he has no more authority than any other magistrate in conducting a preliminary hearing.

Rule 250 provides:

"Examination of defendant's mental condition prior to or during trial; proceeding with trial or commitment of defendant to institution

"A. If before or during the trial the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, is insane or mentally defective, to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately set a time for a hearing to determine the defendant's mental condition. The court may appoint two disinterested qualified experts to examine the defendant with regard to his present mental condition and to testify at the hearing. Other evidence regarding the defendant's mental condition may be introduced at the hearing by either party.

"B. If the court, after the hearing, decides that the defendant is able to understand the proceedings and to assist in his defense it shall proceed with the trial. If it decides that the defendant through insanity or mental deficiency is

not able to understand the proceedings or to assist in his defense, it shall have the defendant committed to the institution authorized to receive him, and the commitment of the defendant shall exonerate his bail. If thereafter the authorized officer of such institution is of the opinion that the defendant is able to understand the proceedings and to assist in his defense, he shall report such fact to the court which conducted the hearing. If the officer so reports, the court shall proceed with the trial, and may again admit the defendant to bail, if he is bailable."

The rule clearly indicates that it has no application to preliminary hearings since the rule does not come into play until an indictment has been found or an information filed. Judicial inquiry into defendant's ability to present a defense is vested only in the trial court which has the power to try the felony offense charged.

A.R.S. § 22–313 reads as follows:

"The rules of criminal procedure for the superior court, including the provisions regarding bail, issuance of subpoenas and punishment for disobedience thereof shall apply to justice of the peace courts so far as applicable and *when not otherwise prescribed*." [Emphasis added.]

■■■■ Since the procedure for determining the question of whether a defendant is insane or mentally defective to the extent that he is unable to understand the proceedings against him or to assist in his defense is expressly vested in the Superior Court, under Rule 250, Rules of Crim. Proced., 17 A.R.S., we hold that such procedure comes within the provision in A.R.S. § 22–313 of being "otherwise prescribed"— namely, in the Superior Court—and therefore Rule 250, supra, does not come within the purview of the jurisdiction of the committing magistrate.

■■■■ The legislature has expressly vested the civil procedure for determining the sanity of a person in the superior court. §§ 36–501 to 514, 11 A.R.S. Hence, the superior court has the jurisdiction both in

civil and criminal cases for the determination of the sanity of the individual. This jurisdiction having been vested in the superior court a committing magistrate has no power—inherent or otherwise—to determine the sanity of a defendant. Since the judge sitting as committing magistrate did not have authority to determine the question of defendant's mental competency to understand the nature of the proceedings or assist in his defense, we therefore hold that the magistrate improperly granted defendants' motion for postponement of the preliminary hearing, under Rule 20, Rules of Crim.Proced., 17 A.R.S., after a hearing for good cause based on the grounds of mental incompetency. The problem then is what the procedure should be where, as in the instant case, a question of whether a defendant is able to understand the charges against him and to assist in his defense is raised in a preliminary hearing. We have not previously passed upon this question. However, a similar question was presented in Flint v. Sater, Okl.Cr., 374 P.2d 929, in the Criminal Court of Appeals. In that case a county court, which, under that state's constitution, was vested with the power to sit as a committing magistrate, had set a preliminary hearing date. But before the preliminary hearing began a district court judge, on application by the county attorney, ordered a jury panel to be called to inquire into the present sanity of the accused. The Criminal Court of Appeals stayed the proceedings in both the county and district courts pending a determination of the issues in defendant's application to the appeals court to prohibit the county court from conducting a preliminary hearing, to prohibit the district court from proceeding with a jury trial on the issue of present insanity, and to order the district court to adjudge defendant presently insane and commit him to the state mental hospital. In Oklahoma authority to determine the sanity of a person charged with a crime was vested in the district court, sitting with a jury, and not the inferior county court. In that case, the Criminal Appeals Court held that the district court was without authority to call a jury until such time as defendant had been bound over to the district court for trial, that the preliminary hearing should proceed in the county court, that if defendant was bound over to the district court for trial the district court could determine the issue of present sanity per statute, and that:

> "If he be found presently sane, the case should proceed to trial on its merits. If, on the other hand, it is determined by the jury that he is presently insane, he should be committed to a State Mental Institution until he is capable of standing trial.

> "When he is returned for trial, the prior preliminary hearing being a nullity because of defendant's insanity, it becomes the trial court's mandatory duty to order a new preliminary hearing. The defendant could, of course, waive his right to preliminary hearing and proceed to trial." 374 P.2d at 932 and 933.

 It is the duty of a committing magistrate to complete a preliminary hearing, and, if probable cause is found, to bind defendant over to the superior court. Defendant could then request a determination of the question of whether he is able to understand the charges against him or to assist in his defense as provided for in Rule 250, supra. If defendant is then committed to an institution in accordance with the rule, and if thereafter the court finds that he is able to understand the nature of the charges against him and to assist in his defense (State v. Bradley, 102 Ariz. 482, 433 P.2d 273), defendant would then have the opportunity of presenting the question of whether the preliminary hearing met the requirements of due process. We held, in State v. Essman, 98 Ariz. 228, 403 P.2d 540, that:

> " * * * Due process of law requires that an accused must be given a full hearing meeting the requirements of due process. * * *"

If the superior court finds that defendant at the time of the preliminary hearing was insane or mentally defective to the extent

that he was unable to understand the proceedings against him or to assist in his defense, it would be the duty of the court to order a new preliminary hearing as was done in the case of Flint v. Sater, supra.

In the instant case, in a civil proceeding, it was ordered that defendant "be confined in the Arizona State Hospital at Phoenix, Arizona, * * * until sufficiently restored to reason or otherwise discharged according to law." A.R.S. §§ 36–501 to 526 set forth the procedure for a hearing, commitment, and release of a defendant charged with insanity. The Superintendent of the Arizona State Hospital is authorized to discharge a patient, upon a finding that the patient is restored to competency, or he might be discharged by the Superior Court. This Court has stated in State v. Buchanan, 94 Ariz. 100, 381 P.2d 954:

> "* * * There we said that the finding of civil incompetency did not preclude the superior court from proceeding in a criminal cause pointing out that there are different degrees of mental incompetency. The requisite mental capacity to stand trial is that a defendant must be able to understand the proceedings against him and to assist in his own defense."

In State ex rel Ronan v. Stevens, 92 Ariz. 227, 375 P.2d 717, we said:

> "The standard for determining incompetency in a civil proceeding differs from that of a criminal proceeding. A.R.S. § 36–501(2) which governs in civil sanity hearings reads:

> " ' "Mentally ill persons" means persons of such mental condition that they are dangerous to themselves or to the person or property of others and are in need of supervision, treatment, care or restraint.'

> "Whereas the degree of incompetency which will prevent criminal proceedings against a person is that he 'is insane or mentally defective, to the extent that he is unable to understand the proceedings against him or to assist in his defense.' Consequently, it is error for the respondent judge to substitute the civil judgment for that of his own in a criminal action.

> "Furthermore, we said in State v. Voeckell, 69 Ariz. 145, 151, 210 P.2d 972 (1949):

> " ' * * * The usual insanity proceedings were left unchanged by our adoption of the new Rules of Criminal Procedure. *But these rules did change the procedure for determining whether an accused should be put to trial when "before or during the trial the court has reasonable ground to believe that the defendant * * is insane * * *" ' *(Emphasis supplied.)

> "Therefore, the court's position that the mental health proceeding is of 'greater dignity' and is 'binding' on a criminal action is unsupported by the law.

> "The petitioner's application for a writ of certiorari is granted and the order of the lower court refusing to grant a hearing pursuant to Rule 250 is set aside. * * *"

In State v. Sheriff of Pima County, 97 Ariz. 42, 396 P.2d 613, we said:

> "The State of Arizona sought a writ of habeas corpus ad prosequendum in this Court to direct the Sheriff of Pima County and the Supervisor of the Arizona State Hospital, to release and transport Peter Damskey to the Justice of the Peace Court in Pima County for a preliminary examination on the charges of murder and assault with intent to commit murder pending before that Justice of the Peace Court. That writ was granted by this Court on October 6, 1964.

> "Contrary to the contention of the respondent Damskey, we feel that the writ of habeas corpus ad prosequendum was a proper remedy in this case. Such a writ may be used by either the State or the accused to return the accused to the county where criminal charges have been filed for the purpose of a preliminary examination. Davis v. County Attorney, Tulsa County, 394 P.2d 243 (Okl.Cr. 1964); Drew v. County Attorney, Tulsa County, 394 P.2d 246 (Okl.Cr.1964).

As held in State v. Sheriff of Pima County, supra, the writ of habeas corpus ad prosequendum was the proper procedure for returning a defendant from the state hospital for a preliminary hearing; however, the Superintendent of the Arizona State Hospital is a necessary party in such a proceeding, and was so made a party in State v. Sheriff of Pima County, supra, but in the instant case the State failed to make the Superintendent a party in its application. Therefore, the application of habeas corpus ad prosequendum in the instant case could not be granted.

It is hereby ordered that the alternative writ of mandamus be made permanent, and Judge Robert O. Roylston of the Superior Court, sitting as committing magistrate, is ordered to proceed with the preliminary hearing, allowing only a reasonable time for the county attorney to have defendant brought into court in accordance with this decision.

UDALL, V. C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.