[Crim. No. 15600. Second Dist., Div. Five. Dec. 30, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
LEONARD ROBERT SPROUL, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bernard S. Kamine, Deputy Attorney General for Plaintiff and Respondent.

## OPINION

**FRAMPTON, J. pro tem.***—

### Statement of the Case

On May 6, 1966, by information number 322179, the defendant was charged with violation of section 11530 of the Health and Safety Code (possession of marijuana). On June 24, 1966, he entered a plea of guilty. On July 27, 1966, sentence was pronounced. The pertinent part of the judgment reads as follows: "Sentence as indicated below suspended. Probation granted for three years. . . .

"Whereas the said defendant having duly pleaded guilty in this court of the crime of VIOLATION OF SECTION 11530, Health and Safety Code, a felony, as charged in the information It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the County Jail of the County of Los Angeles for the term of one year."

At the time of pronouncement of sentence, section 11530 of the Health and Safety Code provided that a state prison sentence be imposed upon conviction of the crime of possession of marijuana.[1]

The defendant was released on probation under this judgment.

On December 26, 1967, the defendant and Jane K. Sproul were jointly charged by information number 403308 with violation of section 11530 of the Health and Safety Code (possession of marijuana). By amended information the defendant Leonard Robert Sproul was charged with the prior conviction suffered in case number 322179.

Both defendants waived trial by jury and by stipulation the cause was submitted upon the evidence adduced at the preliminary hearing with each side reserving the right to offer additional evidence. Jane K. Sproul was found not guilty and the defendant was found guilty. The allegation of the prior conviction was found to be true.

Probation was denied in case number 403308 and sentence to state prison followed. Probation in case number 322179 was revoked and sen-

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]The 1961 amendment to section 11530 of the Health and Safety Code, in effect at the time of sentencing in case number 322179 provided in pertinent part as follows: "Every person . . . who possesses any marijuana, . . . shall be punished by imprisonment in the state prison for not less than one year nor more than 10 years and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than one year in prison." (Stats. 1961, ch. 274, § 7.)

tence to state prison followed. Both sentences were pronounced on May 20, 1968. The sentences were ordered to run concurrently. The appeal is from the judgments.

*Statement of Facts in Case Number 403308*

Shortly after 5 p.m. on September 23, 1967, Gerald Lay, a police officer for the City of South Gate, and his partner, Officer Gluhak, responded to a radio call concerning a family disturbance at 3274 Nebraska Avenue, Apartment B, in the City of South Gate. Upon arriving at that address, Officer Lay "could hear some type of argument going on inside the apartment between a male and a female." The officer knocked on the door and it was answered by Mrs. Jane K. Sproul, who at that time was the defendant's mistress. Officer Lay asked her what the problem was and she stated "that her husband had just beaten her up." Officer Lay then asked if he could come into the apartment and she stepped back from the door and opened the door up. Officer Lay and his partner then entered the apartment.

When Mrs. Sproul opened the door she was mildly hysterical and crying. She did not verbally invite the officers into the apartment; rather, she stepped back away from the door and opened it when asked by Officer Lay if he could come in. He took this as an invitation to enter the apartment and entered. Mrs. Sproul told the officers that she and the defendant were not merely having an argument, but that he had beaten her. Furthermore, when asked if she wished to file a complaint against the defendant she replied that she did. The officers did not observe any objective marks of a beating on Mrs. Sproul.

Upon entering the apartment, Officer Lay saw an open cardboard shoe box on top of the couch. He was standing about five to eight feet from the couch, and from there he could see inside the shoe box. In it were elliptical-shaped seeds which appeared to be marijuana seeds and debris. It was not necessary for him to move further into the apartment to make these observations; he saw the marijuana seeds in the box on the couch from where he stood after entering the apartment.

Officer Lay had made a number of arrests for possession of marijuana prior to this case. He also had had specialized schooling in visual identification of the parts of a marijuana plant, particularly the seeds. Upon seeing the marijuana seeds in the shoe box, he went over to the couch and picked a few seeds out of the box for closer inspection.

After making these observations he asked Mrs. Sproul where the defendant was and she replied that he was in the bathroom. Officer Lay picked up the box of marijuana seeds on the couch and took it with him to the

bathroom. When he reached the door of the bathroom he heard scuffling noises inside. He tried the bathroom door, but found it to be locked. Then he knocked on the door, identified himself as a police officer and demanded admittance. Receiving no response, he forced entry. He broke into the bathroom because he was afraid that any marijuana in there would be destroyed by defendant or that the defendant would escape through the bathroom window. The apartment is on the ground floor and the bathroom window is only seven feet from the ground below it.

When Officer Lay entered the bathroom, the defendant was standing in the bathtub facing the bathroom window with his hands on the aluminum screen. The top and one side of the screen had been pulled loose from the metal tabs holding the screen against the wall. The louvers of the window were open. Several marijuana seeds were floating in the water in the toilet bowl.

Officer Lay arrested the defendant and advised him that "he had a right to remain silent; that anything he said could be used against him in a court of law; that he had a right to have an attorney present at all stages of the proceedings, and that if he could not afford an attorney, one would be provided for him." The defendant stated that he understood his constitutional rights. He then asked the defendant whether he had been throwing anything out the window and whether there was any further contraband in the house. The defendant disclaimed knowledge of any contraband and stated that he had thrown nothing out the window.

Officer Lay then searched the bathroom, in the trash can of which he found more marijuana seeds and debris, and the balance of the apartment, in which he found nothing. He then peered out the bathroom window, but could not see the ground from his position, so he directed his partner to go around behind the apartment and look beneath the window. After his partner got outside and told Officer Lay that he had found something, Officer Lay took the defendant and Mrs. Sproul outside the apartment and around to the rear underneath the bathroom window. There he found a newspaper containing 10 hand-rolled cigarettes and a quantity of debris all of which appeared to be marijuana. The newspaper containing debris and cigarettes was less than two feet away from the building, lying on the ground directly beneath the bathroom window. The newspaper was partially open. The cigarettes, some zigzag papers and some of the debris were plainly visible. The paper was small enough to have passed between the louvers of the bathroom window.

Officer Lay did not inquire who lived in the apartment until the defendant and Mrs. Sproul were booked. At that time he asked each of them

their home address and both gave the apartment address. Mrs. Sproul had theretofore been advised of her constitutional rights.

It was established that the seeds, debris and cigarettes were marijuana.

### Defense

The defendant's wife, codefendant Jane K. Sproul, testified that she had left the apartment at about 2 p.m. on September 23, 1967, at which time the box with the marijuana seeds was not on the couch. She returned at about 5:15 p.m. at which time she got into an argument with the defendant. He did not strike her and she did not call the police. The argument continued for about 15 minutes, ending just before the police arrived. During the argument, which was about a purchase she had made, there was loud screaming back and forth.

When the officers knocked on the door, Mrs. Sproul answered, opening the door and swinging it wide. As she opened the door, she stepped back away from it and the officers walked in. When she started to open the door in this manner, she did not know who was outside. She opened the door wide, even though, when she had opened it partially, she saw the two police officers in their uniforms standing there.

Mrs. Sproul testified that there was no conversation with the officers at the door before they walked in, and that she at no time told them that the defendant had beaten her nor did she ask them to arrest the defendant. She did not remember whether she was crying at the time the officers arrived, but her eyeliner had run and smeared around her eyes and her hair was not set, so when the officers first saw her she probably looked like she had just been crying. She had been crying prior to the arrival of the officers.

Mrs. Sproul testified further that after entering, Officer Lay was only in the apartment a matter of seconds before he had picked up the box on the couch with the marijuana seeds in it. Upon seeing the seeds, Officer Lay suggested to his partner that the defendant might have already flushed the marijuana in the bathroom. The box on the couch with the seeds in it was open, it did not have a lid. It was clearly visible to anyone standing by the couch.

Defendant entered the bathroom just a moment before the officers knocked on the door. The apartment is very small, and, by looking around, it would have been obvious to the officers that the only place the defendant could have been was in the bathroom. Mrs. Sproul did not indicate to the officers where the defendant was.

Mrs. Sproul's view of the bathroom door was blocked by Officer Lay

as he approached it. She did not see him try to open the door and she is positive that he did not knock.

## Contentions on Appeal

Defendant urges reversal upon the following grounds: (1) The officers' entry into the apartment was illegal because of lack of valid consent; (2) the search was illegal because the marijuana seeds found in the shoe box on the couch were not in plain view and that the entry into the bathroom and the searches that followed such entry were the fruit of that search and therefore also illegal; (3) the revocation of the defendant's probation on the prior offense was based on the second conviction which was the fruit of the unlawful search, therefore, the revocation of probation was improper; (4) the denial of probation for the current offense was based on an incorrect interpretation of the law, therefore, the case should be remanded for redetermination on the issue of probation; (5) ignoring the sentence to the county jail in the prior action and sentencing to state prison after revocation of probation therein was beyond the court's authority; and, (6) pursuant to the 1968 amendment to section 11530 of the Health and Safety Code, effective November 13, 1968, the cases should be remanded for the trial court to exercise its discretion in making either or both violations misdemeanors.

 Mrs. Sproul, although she was not married to the defendant on the day the officers called at the apartment, was a joint occupant of the property, and, as such, being on the premises at the time of the call, had authority to give consent to entry thereon. (See *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 68-69 [27 Cal.Rptr. 889, 378 P.2d 113]; *People* v. *Smith,* 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222].) Whether consent is given is a question of fact for the trial court to determine. (*People* v. *Guyette,* 231 Cal.App.2d 460, 464 [41 Cal.Rptr. 875].) A mistress may consent to the entry of the apartment occupied by her and her common law husband. (*People* v. *Nelson,* 218 Cal.App.2d 359, 362-363 [32 Cal.Rptr. 675].) Although Mrs. Sproul did not verbally invite the officers into the apartment, her actions in opening the door and stepping back when Officer Lay asked if they could come in, was conduct upon which the officers could rely in good faith as constituting an invitation to enter. (See *People* v. *Burke,* 47 Cal.2d 45, 48 [301 P.2d 241].)

The evidence discloses that the marijuana seeds in the shoe box on the couch were in plain view of Officer Lay from his position in the apartment after he was admitted. An officer may seize any evidence or contraband falling within his plain view when he is legally in a position to have that view. (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067,

1069, 88 S.Ct. 992]; *People* v. *Sandoval,* 65 Cal.2d 303, 308 [54 Cal. Rptr. 123, 419 P.2d 187].) Such discoveries do not constitute a search. (*Ker* v. *California,* 374 U.S. 23, 43 [10 L.Ed.2d 726, 744, 83 S.Ct. 1623]; *People* v. *Berutko,* 71 Cal.2d 84, 91-94 [77 Cal.Rptr. 217, 453 P.2d 721]; *People* v. *Marshall,* 69 Cal.2d 51, 57-58 [69 Cal.Rptr. 585, 442 P.2d 665].)

 The record discloses that the apartment was a small, one bedroom apartment. It was on ground level. Officer Lay, before entering the apartment, heard an argument between a male and a female person. Upon being admitted to the apartment he observed the contraband in plain view. This afforded him probable cause to arrest the occupants. (See *People* v. *Sandoval, supra,* at p. 308.) According to Officer Lay, he was told that the defendant was in the bathroom. He tried the door to the bathroom and found it locked. He knocked on the door, identified himself as a police officer, and asked to be admitted, but received no response. He heard a scuffling sound from within the bathroom. He then forced entry into the bathroom believing that contraband would be destroyed and that the defendant might escape. The marijuana seeds floating in the toilet bowl were in plain view. Marijuana seeds were then found in the trash can in the bathroom. On the ground immediately under the bathroom window, where the defendant was seen standing with his hands on the aluminum screen, was found a partially opened newspaper containing 10 hand-rolled cigarettes, and a quantity of debris, all containing marijuana.

The marijuana found in the bathroom was not the result of a general indiscriminate search, but was come upon by Officer Lay in the pursuit of a suspect. (See *Gilbert* v. *California,* 388 U.S. 263, 275 [18 L.Ed.2d 1178, 1187, 87 S.Ct. 1951]; *People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665].) The marijuana found on the ground outside the apartment was in a common area in the apartment complex open to the view of anyone who chanced by and was not obtained by means of an unlawful search and seizure. (See *People* v. *Chilton,* 239 Cal.App.2d 329, 332 [48 Cal.Rptr. 212]; *Pinizzotto* v. *Superior Court,* 257 Cal.App.2d 582, 588 [65 Cal.Rptr. 74].) The rule announced in *Chimel* v. *California,* 395 U.S. 752, 765 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034], is not applicable to the search here under consideration. (*People* v. *Groves,* 71 Cal.2d 1196, 1199 [80 Cal.Rptr. 745, 458 P.2d 985].)

 The defendant urges that revocation of probation in the prior

case (number 322179) was based on the second conviction and was therefore illegal because it was the fruit of the unlawful search. There is no merit in this contention. First of all, the second conviction was not based upon an unlawful search. Furthermore, had there been no second conviction, the trial court would have been warranted in revoking probation, because circumstances not warranting a conviction may fully justify a court in revoking probation on a prior offense. (*People* v. *Bawden*, 208 Cal.App.2d 589, 598 [25 Cal.Rptr. 368]; *People* v. *Vanella*, 265 Cal.App.2d 463, 469-470 [71 Cal.Rptr. 152].) There was no abuse of discretion shown here in revoking probation in the prior case.

■ Next, the defendant argues that denial of probation for the current offense was based on an incorrect interpretation of the law. He contends that "If the Court had realized that without the prior, appellant was eligible for probation, and if he had realized that the District Attorney had the right to move to dismiss the prior, he might have asked the District Attorney to do so. And the District Attorney might well have made such a motion." There is nothing in the record to show that the district attorney was unaware of his power to dismiss the prior conviction pursuant to the provisions of section 11718 of the Health and Safety Code, and we are not aware of any rule which requires the trial judge to ask the district attorney to exercise his power to move the dismissal of a prior or to strike it from the accusatory pleading prior to the pronouncement of judgment and sentence. There is no error shown here.

The defendant urges that ignoring the sentence to the county jail in the prior action and sentencing to state prison after revocation of probation therein was beyond the court's authority. The sentence to the county jail upon the first conviction was unauthorized by law. A violation of the provisions of section 11530 of the Health and Safety Code as it read at the time of sentence (July 26, 1966) required the imposition of a sentence to state prison. The trial court, at the time of imposition of sentence in case number 403308, recognized that that portion of the judgment in case number 322179 imposing a sentence to the county jail was void. While there was no formal motion before the court to set aside the void sentence and reimpose a valid sentence, the court, by implication, of its own motion, set aside the void sentence and reimposed a proper sentence to state prison on the first offense. ■ Where, as here, the sentence is beyond the power of the court to impose, it is void and the court has the power at a later time, upon revocation of probation, to impose the legally provided sentence. (*In re Robinson*, 142 Cal.App.2d 484, 486 [298 P.2d 656]; see *People* v. *Clinton*, 243 Cal.App.2d 284, 288 [52 Cal. Rptr. 221]; *People* v. *Whitfield*, 259 Cal.App.2d 605, 610-611 [66 Cal. Rptr. 438].) ■ The unauthorized grant of grace or clemency,

achieved by imposing a county jail sentence in a case where a sentence to state prison alone was required, did not have the effect of reducing the offense to that of a misdemeanor. (*People* v. *Kelley*, 161 Cal.App.2d 215, 222-223 [326 P.2d 177].) ▓ The conviction in case number 322179 was a felony offense within the purview of section 11504 and 11530 of the Health and Safety Code, and the defendant was ineligible for probation upon his subsequent conviction. (*People* v. *Thatcher*, 255 Cal.App. 2d 830, 831 [63 Cal.Rptr. 492].)

▓ Defendant urges that the cause be remanded for the trial court to exercise its discretion in making either or both violations a misdemeanor by reason of the amendment to section 11530 of the Health and Safety Code, effective November 13, 1968, and pursuant to the rule laid down in *People* v. *Francis*, 71 Cal.2d 66, 75-78 [75 Cal.Rptr. 199, 450 P.2d 591], and *People* v. *White*, 71 Cal.2d 80, 83-84 [75 Cal.Rptr. 208, 453 P.2d 600].

The 1968 amendment to section 11530 of the Health and Safety Code provides for a mandatory state prison sentence where the accused has been previously convicted of "a felony offense described in this division." Section 11504 of the Health and Safety Code defines a felony offense as follows: "As used in this article 'felony offense,' and offense 'punishable as a felony' refer to an offense for which the law prescribes imprisonment in the state prison as either an alternative or the sole penalty, regardless of the sentence the particular defendant received." In view of this language it would make no difference in the sentence pronounced upon the second conviction, if, upon remand, the trial court should impose a county jail sentence for the prior narcotic violation pursuant to the authority granted by the 1968 amendment, for such offense would still constitute a prior felony offense within the meaning of sections 11504 and 11715.6 of the Health and Safety Code and would make the defendant ineligible for probation upon the second conviction and would require a mandatory sentence to state prison upon such conviction. (*In re Sanchez*, 65 Cal.2d 556, 558, 559 [55 Cal.Rptr. 422, 421 P.2d 430].) However, a sentence to the county jail upon the first conviction could result in possible benefit to the defendant under section 1203 of the Penal Code (conditions under which probation may be granted upon a subsequent conviction of a felony), and would eliminate a prior conviction of felony which could be used as the basis of the impeachment of the defendant in any action in which he may be called to testify as a witness. With these considerations in mind and under the policy announced in *People* v. *Francis*, *supra*, and *People* v. *White*, *supra*, we are of the opinion that the sentence in case

number 322179 should be set aside and that such cause should be remanded to the trial court for reconsideration of the imposition of sentence under the 1968 amendment to section 11530 of the Health and Safety Code.

The sentence in case number 322179 is set aside and that cause is remanded to the trial court for reconsideration of the imposition of sentence under the 1968 amendment to section 11530 of the Health and Safety Code. The judgments are affirmed in all other respects.

Kaus, P. J., and Reppy, J., concurred.