471 P.2d 748

**The STATE of Arizona, Appellee and Cross-Appellant,**

v.

**Catherine LENAHAN, Appellant and Cross-Appellee.**

**No. 2 CA–CR 202.**

Court of Appeals of Arizona, Division 2.

July 13, 1970.

Rehearing Denied Sept. 2, 1970.

Review Denied Oct. 27, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., for appellee State.

Rose Silver, County Atty., Pima County, Tucson, by Horton C. Weiss and David G. Dingeldine, Deputy County Attys., for cross-appellant State.

William T. Healy, Tucson, for appellant and cross-appellee.

KRUCKER, Judge.

Catherine Lenahan was informed against for the crime of attempted murder. A jury found her guilty and she was sentenced to not less than five nor more than eight years. She appeals these determinations.

The facts are as follows. An altercation between defendant and undersheriff James O. Wyckoff took place on November 24, 1968. Both parties lived at a Tucson address along with defendant's daughter. Following the disagreement, both persons

went to their bedrooms and took out guns. The defendant then fired three shots from various points in and outside the house, the last shot striking Mr. Wyckoff in the neck. He is alive but quadriplegic.

There was no dispute that defendant in fact fired a shot which struck Mr. Wyckoff. The essential difference in the versions of what took place revolves around placing responsibility for the initial argument and in establishing defendant's intent. There was evidence that both had consumed a considerable quantity of beer during the day. Both the daughter and the mother testified that Mr. Wyckoff had struck defendant several times, and there was general uncontested psychiatric evidence that defendant had some emotional problems relating to her relationship with Mr. Wyckoff, her father, and other situational factors.

We take the issues raised on appeal in order.

## THE PROSECUTOR'S ZEAL DENIED DEFENDANT A FAIR TRIAL

Defendant contends the State was so overzealous in its presentation of its case that she was denied a fair trial. In particular, defendant points out that the prosecutor made many objections during the trial and the court reprimanded him several times. Defendant also points out that, at the closing, counsel picked up an exhibit (refused admission into evidence), an alleged statement by the daughter of the defendant, and argued that facts were being kept from the jury by defense counsel.

At the motion for new trial, the trial court heard essentially these same arguments and denied the new trial request. The court said it did not believe that this case was a flagrant violation of the rules of propriety found in State v. Jordan, 80 Ariz. 193, 294 P.2d 677 (1956); Rutledge v. State, 41 Ariz. 48, 15 P.2d 255 (1932).

We, nevertheless, believe a review of the record is relevant.

The prosecution, according to defendant's count, made approximately 290 objections during the trial; defense counsel, according to the State, made about 137. Both sides, at different times, moved for mistrial, charging misconduct by opposing counsel. Mr. Weiss believed defense counsel was attempting to contaminate the jury by introducing innuendos about the Sheriff Burr indictments. Defense counsel believed Mr. Weiss, by waving a specifically rejected exhibit, implied Mr. Healy was attempting to hide the truth.[1]

Twice counsel and the court, as cited in defendant's brief, had heated words. Both times the court reprimanded Mr. Weiss for making insinuating comments and trying to take over the courtroom. However, on both occasions, the interchange took place outside the jury's presence.

The record shows repeated emotional events. Mr. Wyckoff's wheelchair presentation was dramatic. Mrs. Lenahan's sobbing and lack of composure not only stopped her testimony temporarily, but dramatized her emotional state. And, as usual, there were attempts by both sides to impeach and rehabilitate witnesses.

■ We do not believe, however, that the conduct of counsel at trial was so prejudicial as to require a retrial. We concur with the trial court's determination.

## THE PRELIMINARY HEARING SO VIOLATED DEFENDANT'S RIGHTS THAT REVERSIBLE ERROR OCCURRED

In particular, defendant has three contentions. First, she argues it was reversible error for the trial court to deny counsel argument at the hearing as to whether to continue proceedings without the victim's testimony. Second, she argues that

---

1. "MR. WEISS: * * * Since, if there was any concealment of silence in this case about what went on in this Courtroom, talked to you about the evidence and what went on in this Courtroom, if there was any endeavor to keep things from this jury—an example of that is Exhibit 50 came right in. 51 didn't come in. 51 is offered, objected to.
"MR. HEALY: I think that is improper."

the court erred in admitting the physician's testimony over "privilege" objections. Thirdly, she contends the only evidence presented linking defendant to the crime was improperly admitted.

The record reveals that two days of preliminary hearings took place initially. The victim, Mr. Wyckoff, was not available to testify. At the end of the second day, defense counsel requested proof of Mr. Wyckoff's inability to appear. Shortly thereafter, an attempt was made to hear Mr. Wyckoff's testimony in Phoenix, where he was hospitalized. However, a petition for a writ of prohibition sought by defendant was granted holding that a Pima County Superior Court has no hearing power in Maricopa County. The court then reviewed the evidence already given and determined that enough evidence had been presented to bind defendant over. Apparently, defendant was not allowed to present argument as to this final determination.

The purpose of a preliminary hearing is to determine whether there is probable cause that defendant caused the offense charged in the information. State v. Pima County Superior Court, 103 Ariz. 369, 442 P.2d 113 (1968); State v. Marlin, 5 Ariz.App. 524, 428 P.2d 699 (1967).

The preliminary hearing must comport with the requirements of due process, McWilliams v. Justice Court, Tucson Precinct No. 1, Pima County, 5 Ariz.App. 200, 424 P.2d 848 (1967), but this does not mean that all the procedures for a trial need be employed.

We cannot believe that the failure to give defense counsel closing argument so prejudiced defendant's position at the preliminary hearing as to demand reversal. We also believe there was adequate, and *properly admitted*, evidence presented to indicate defendant had in fact shot Mr. Wyckoff. The ambulance driver, Mr. Kordsiemon, who arrived at the house after the shooting, testified Mr. Wyckoff told him he was shot in the neck and that the "housekeeper" had shot him. There

was also testimony by an officer, Mr. Lyons, that, on interviewing the defendant at the hospital, she admitted firing the shot which struck Wyckoff. Another sheriff's deputy, Manuel Verdugo, also testified Mr. Wyckoff told him at the hospital that "Katy" shot him and defendant herself had so admitted to him. We believe defendant was properly bound over, notwithstanding any complaints she may have as to the admission of some evidence.

We do not believe that defendant can point to any defect in a preliminary hearing which is curable at this point in the proceeding. This court has held that certain standards of case presentation apply to a preliminary hearing. However, short of a jurisdictional defect in the subject matter such as laid forth in Rule 316, 17 A.R.S., Rules of Criminal Procedure, which would also be grounds for arrest of judgment, we are compelled to hold that, generally speaking, errors at a preliminary hearing must be remedied prior to trial. State v. Cuzick, 5 Ariz.App. 498, 428 P.2d 443 (1967). Once trial is over and properly completed, a "nonjurisdictional" error at a preliminary hearing is lost.

In the instant case, we do not believe there was jurisdictional error in the magistrate's failure to allow defense counsel to argue, in the magistrate's allowance of the victim's doctor's testimony, or in the noncontinuous nature of the hearing. Each of these complaints could have been remedied at the hearing prior to trial had they been found to be error, but trial now having resolved the ultimate questions, a reversal of the whole proceeding serves no function.

## THE ARIZONA STATUTE ON ATTEMPTED MURDER IS INVALID

Defendant contends that A.R.S. § 13-110 is invalid. In particular, she contends it is invalid because a base maximum sentence of one-half life is imposed which is so indefinite as to make the statute unconstitutionally invalid.

**450**

We point out that the Arizona Supreme Court has answered this contention at least twice, once in State v. Mandel, 78 Ariz. 226, 278 P.2d 413 (1954), and once in State v. Williams, 103 Ariz. 284, 440 P.2d 311 (1968). The Supreme Court points out that the crime of attempted murder in the first degree is not a crime in Arizona because the sentencing statute covering it has impossible limits as to both minimum and maximum sentences. However, when a defendant is simply charged and convicted on a non-degree designated charge of attempted murder, as in the instant case, the court construes the count as attempted murder in the second degree and sentences accordingly.

A sentence for attempted murder in the second degree is one half the sentence for second degree murder which is not less than ten years nor more than life. Thus, the penalty for the attempt is not less than five years nor more than half a life sentence. The definiteness of the base minimum makes it a valid sentence. Our Supreme Court has held that the trial court, in fixing the base maximum sentence, need only fix a lifetime basis and divide it in half. *Mandel,* supra.

We, therefore, reject defendant's contentions on these issues.

Defendant also contends that 5 A.R.S. § 13-110 is a general statute, which is superseded in part by 5 A.R.S. § 13-248 which condemns assault with intent to commit murder because to a certain extent they are identical. We must disagree. Obviously, attempted murder, broadly defined does not require present ability to complete the act, *Mandel,* supra, nor are all attempted murders accomplished by assaults, to wit, poisonings. And we do not believe that, because the assault statute is specific, it must be used when an attempted murder involves an assault. The Arizona Supreme Court has held that, when a criminal offense falls under either of two statutes, neither is impliedly repealed if there is no inconsistency between them and prosecution may be pursued under either statute. State v. Culver, 103 Ariz. 505, 446 P.2d 234 (1968).

## THE VERDICT WAS CONTRARY TO THE LAW AND WEIGHT OF THE EVIDENCE

In particular, defendant contends no evidence of the specific intent to murder was presented to the jury.

5 A.R.S. § 13-108 provides:

"An attempt to commit a crime is the performance of an act immediately and directly tending to the commission of the crime with the intent to commit such crime, the consummation of which fails on account of some intervening cause."

The trial court, at the motion for a new trial, also reviewed this question and stated that it believed there was more than enough evidence to show defendant's intent was to murder. The Arizona rule as to attempted crimes is clear. An attempt must be proven as to both the overt act and the intent. And the intent must be proven by evidence of facts other than those of the overt act. Elfbrandt v. Russell, 97 Ariz. 140, 397 P.2d 944 (1964). Just what other facts there might be is the question.

We have noted generally and often that criminal intent must always be shown by circumstantial evidence. No one can read another's mind so intent must be inferred from defendant's conduct or his comments. Arizona has expressly held that, although entry into a dwelling alone cannot be used as evidence of intent to steal because entry by itself is an element of burglary, recent unexplained possession of stolen property can raise an inference of theft. State v. Rood, 11 Ariz.App. 102, 462 P.2d 399 (1969). Also, it has been held that use of a deadly weapon can be sufficient fact from which to show malice. 41 C.J.S. Homicide § 316, n. 63 at 28.

In the instant case, there is no dispute that the shot which struck Mr. Wyckoff was fired by defendant. She

claims, however, that she was firing at random to keep him away from her and was terribly surprised when she realized he had actually been struck. We believe there was more than adequate evidence from which the jury could find defendant's conduct with a gun was malicious. The trial court, on reviewing the record, put it as follows:

\* \* \* \* \* \*

" \* \* \* The evidence shows that it is not disputed that Mr. Wyckoff went to the southwest bedroom, the bedroom that was designated the bedroom of the defendant, that he opened the door and there she stood with a gun in her hand; that he pulled the door to quickly and went down the hall into his room. He went in and locked the door. That is not disputed. Shortly thereafter the defendant shot through the door near the handle of the door. After that she went around the front door, round the front window.

\* \* \* \* \* \*

"It took her some time after she shot, particularly after she left her own bedroom, hesitated at the door to shoot, before she gets outside, and goes around, it is two or three or four steps from the time you get off the threshold there and the little porch there, where she gets to the position to shoot, as she did, into the front bedroom.

"The question is then, during this time, is she still trying to scare him away? She could have turned to the right, the garage is to the right, just to the left as you look there, and there is the car sitting in the garage. After she shoots in the window, she goes back through this same door, down the hall, through the corner of the bedroom, into the kitchen, and it is in the kitchen, and Mr. Wyckoff is near the breezeway, the door \* \* \* is open and maybe he is stepping into the breezeway, and she goes back in all that distance, which must be 40 or 50 feet or more, and much

further than it is to her car, and she shoots.

"The jury could have said, well, why didn't she go to her car, if she had the intent to get away, if all she was trying to do was to escape, she could have gone to her car. She could have gone to her car while he was locked in his bedroom before she made the shot. She could have gone to the bedroom. She didn't have to go back into her house. He was far enough away and he didn't know exactly where she was. She had shot twice. He wasn't going to go out in the front there with the gun in her hand shooting at him, taking a chance of being shot. If she had gotten into her car and stepped on the starter, he couldn't have stopped her. \* \* \* Well, the jury could conclude that she didn't have to do all of this. \* \* \* She had an opportunity to get away. She had two opportunities; one after the first shot through the door she could have gone before she shot through the door she could have gone before she shot through the window and after that instead of going back into the house she could have gone into the car. The car was there. Her keys were in it, her bag was in it, according to the evidence because the bag was found afterwards. Plenty of opportunities. A flick of the key and step on the starter and away you go, quicker than what she did.

"The jury can say, here is a set of circumstances that do not jibe, that shows she wasn't sincerely trying to escape, that she had the intent to get him and that she was after him. That is sufficient, that evidence alone that would require this Court to say that there was enough acts, overt acts with a gun indicating that she had the intent to kill Mr. Wyckoff, and the jury is the judges of the facts and they have decided these facts. They have ruled against the defendant. They have found she had the intent to do this act, and therefore they brought in the verdict of guilty."

## THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant contends that the trial court erred in refusing to suppress evidence illegally obtained at the scene of the crime. In particular, it is pointed out that the warrantless search in question has no justification in case law.

We isolate the following facts. The shooting took place in the late afternoon hours. The defendant's daughter then called Kord's ambulance. Upon arriving and ascertaining the situation, the Kord's attendant called the police and a second ambulance. By evening, all parties, including the daughter, had been taken to the hospital. The house was vacant when the deputies arrived at approximately 8:38. They secured the house and checked to make certain that no one armed with a gun remained on the premises. They spent the evening extensively searching the house. The deputies uncovered two guns in separate bedroom drawers, and they extracted bullets from the structure. A woman's purse and keys were found in the car, parked in the driveway, and removed. Bloodstained objects were taken from the floor.

At no time was a search warrant sought or issued. Presumably, the deputy sheriffs believed that, since the victim was a fellow officer and their superior, no specific consent or warrant was required. The officers testified that they asked no one if they could so search.

To begin, we believe there is no doubt but that defendant has standing to challenge the search in question despite her lack of legal estate in the house. She had resided in it with Sheriff Wyckoff for some time and had no other residence. People v. Sproul, 3 Cal.App.3d 154, 83 Cal.Rptr. 55 (1969).

Secondly, we believe there was no evidence presented which could justify the warrantless character of the search and investigation in question. In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court held that a warrantless search per se was unreasonable unless it came within one of the few delineated exceptions, namely (1) consent, (2) exigent circumstances, or (3) incident to an arrest.

As to the first exception, we find no contested issue. The officers testified that they did not obtain consent. As to the second exception, the State argues this as a possible theory, citing Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). In that case, the police were in rapid pursuit of an armed felon seen to have entered a certain house. After entering the premises, the police discovered ammunition and clothing of the type the fleeing man was said to have worn and used. The defendant was found in an upstairs bedroom feigning sleep and he was immediately arrested. The Court held that, when failure to search would endanger the lives of others at that moment, it was reasonable. We do not believe that after securing the house in question, and finding it empty, the officers were in hot pursuit of a dangerous felon for which a detailed house search was required. There was no compelling urgency to search the premises without first getting a warrant. This, of course, does not mean that the officers could not testify as to what they saw in open view as they were securing the premises. Palmore v. State, 283 Ala. 501, 218 So.2d 830 (1969).

Thirdly, and most forcibly, the State argues that the search was valid as incident to a lawful arrest, applying pre-Chimel standards. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). As we pointed out in State v. Gumins, 12 Ariz.App. 267, 469 P.2d 833 (1970), prior to Chimel, the only general limitation on the scope of a search incident to a lawful arrest was that it be proximate in time and place. Thus, in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), the Court upheld the search of a defendant's entire apartment when he was arrested there. At the

same time, in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the Court upset a search of a car as incident to an arrest when the search occurred after the vehicle had been towed to a garage. The Court said:

"  *  *  *  The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. *But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.  *  * "* (Emphasis added) 84 S.Ct. at 883.

Here, the arrest of defendant, at the earliest point in time, occurred at the hospital when officers arrived to investigate. The arrest surely occurred when defendant was transferred to a second hospital and a "hold" placed on her by officers. In either case, the search took place approximately fifteen miles away.

We believe the search was far too remote in place to be contemporaneous with the arrest. In James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965), under pre-*Chimel* doctrine, the United States Supreme Court held that the search of an accused's home two blocks away from his arrest on a street corner was not incident to his arrest. We believe the instant case is even more remote and thus the fruits of the search should have been inadmissible at trial.

However, having agreed with defendant that the evidence in question should have been suppressed, we do not believe a new trial is demanded. Defendant took the stand on her own behalf and testified as to every bit of evidence which the physical evidence corroborated. She indicated which room was hers and where her clothes were found. She testified that she and Mr. Wyckoff had been drinking beer, and she also testified she had left her purse and keys in her car in the carport. She testified as to the shots she fired, one through Mr. Wyckoff's window, one through the kitchen door and one from the hall at the doorknob. The defendant stated that both she and Mr. Wyckoff had guns in their dresser drawers, and Mr. Wyckoff had told her daughter to return the guns to the drawers after the shooting. And defendant testified that Mr. Wyckoff was bleeding on the floor where he had fallen.

The United States Supreme Court has held that a constitutional error can be harmless, Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), particularly can it be harmless when overwhelming direct evidence of an untainted nature is presented. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In this case, defendant herself has made illegally seized evidence admissible by testifying to those same facts, and no prejudice results. Tooley v. State, 448 S.W.2d 683 (Tenn.App.1969); *cf.* Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). *Contra,* United States ex rel. Savino v. Follette, 305 F.Supp. 277 (S.D.N.Y.1969). Indeed, we find it difficult to believe that any real factual dispute occurred here which that physical evidence shed light upon. Defendant's state of mind was truly the only issue, both sides conceding defendant, in fact, shot Mr. Wyckoff.

## CROSS-APPEAL

Pursuant to 5 A.R.S. § 13–1712, subsec. 4, as amended, the State has cross-appealed on two evidence questions. First, the State contends the trial court erred in allowing a psychiatrist to testify as to defendant's state of mind at the time of the crime; and second, the State contends the trial court erred in giving defendant's instruction allowing the jury to consider

**454**

this testimony in determining guilt or innocence.

We are tantalized by the contentions presented, but believe it would be inappropriate to discuss them in light of our affirmance here. The question is moot. As we said in State v. Hunt, 8 Ariz.App. 514, 447 P.2d 896 (1968):

> "Since we have affirmed the conviction * * * there could be no prejudice to the State and the cross-appeal is dismissed."

8 Ariz.App. at 522, 447 P.2d at 904.

Judgment affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.