555 P.2d 338

**STATE of Arizona, Appellee,**

v.

**Michael Ponce TACHO, Appellant.**

**No. 3306.**

Supreme Court of Arizona, En Banc.

Sept. 7, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

HAYS, Justice.

Michael P. Tacho was convicted by a jury of robbery and murder in the first degree on July 31, 1975. He was sentenced to life imprisonment on the murder conviction and to 30 to 35 years on the robbery, the sentences to run consecutively. We have jurisdiction of this appeal pursuant to the Arizona Constitution, article 6, § 5, article 2, § 24 and A.R.S. § 13–1711 and § 12–120.21(A)(1).

The first trial of this matter ended in a mistrial on April 16, 1975. On May 2, 1975 new defense counsel were substituted for the public defender, and transcripts of the first trial were ordered to be provided to the new defense attorneys. Several continuances were granted before the transcripts finally became available. The record reveals that the transcripts were available on July 10, 1975, and a motion by defense counsel was granted on that day to continue the trial date to July 24, in order to give counsel time to study those transcripts.

The issues in this appeal arise from the testimony admitted in evidence from three of the state's witnesses at the trial, one of whom, Manuel Tacho, appellant's brother, was designated by the trial court as a witness adverse to the state. The state was then allowed to cross-examine and impeach Manuel Tacho with regard to several statements made by him to the police which incriminated the appellant and which, at trial, Manuel denied ever having made. It was also contended by the state that Manuel gave the police some physical evidence incriminating the appellant. Again, on the witness stand, Manuel denied giving the police the green army jacket in question. Instead, he said they found it on their own. Impeachment of this witness was accomplished by allowing the police officer, to whom the statements were made and the jacket given, to testify to the statements and the act. Defense counsel's cross-examination of Manuel Tacho and this policeman was unfettered, and there is no contention that the jacket was illegally obtained.

The second witness whose testimony is attacked on appeal was Ralph Federico.

Federico was an eyewitness to the crimes, a late night robbery of an all-night convenience store, and the murder of its clerk. He told investigating officers, shortly after, that he had recognized appellant as the perpetrator. However, at the preliminary hearing, Federico changed his story completely and denied knowing who committed the crimes or being able to identify the appellant as the perpetrator. Nevertheless, the state called Federico at both trials, where he again did an about-face and testified in each instance that he could identify appellant as the man who committed the robbery and murder.

The third witness involved in the facts of this appeal is Detective James C. Johnson, chief investigating officer. Johnson admitted on cross-examination to going to see the witness Federico the day after the preliminary hearing and to telling Federico that he had lied at the preliminary hearing and would go to jail for perjury. Johnson also admitted telling Federico that the police had sufficient physical evidence to place the appellant at the scene, but that he would like to have Federico's testimony anyway. At the time he made this statement he knew that the police did not yet have such physical evidence, although he was optimistic about lab reports he was awaiting.

Defense counsel's cross-examination of both Federico and Johnson was again completely unfettered. On cross- and re-direct examination, Federico testified that he had lied at the preliminary hearing because he was afraid of what appellant's family might do to him or his family if he identified appellant. Federico also testified that no one forced him to appear at the trial and tell the truth, but that he ". . . just wanted to come, tell the truth. That is it."

Appellant raises two issues of Constitutional dimension on this appeal:

1. Did the admission of statements attributed to Manuel Tacho, who de-nied ever making them, deprive appellant of his Sixth Amendment right to confrontation?

2. Did the trial court's failure to hold, sua sponte, a hearing on the voluntariness of Ralph Federico's statements linking appellant to the crime violate appellant's Sixth and Fourteenth Amendment rights to a fair trial and due process of law?

## DEPRIVATION OF RIGHT OF CONFRONTATION

Cited by appellant in support of his contention that he was deprived of his right to confront a witness against him, Manuel Tacho, is *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). More in point and, in fact, dispositive of this contention, is *Nelson v. O'Neil*, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), decided by the United States Supreme Court one year after *Green*.

The relevant facts in *Nelson* were that two codefendants were jointly charged with kidnapping, robbery and vehicle theft. Immediately after their arrest, one codefendant, Runnels, made an unsworn, oral statement to a police officer, admitting the crimes and implicating his codefendant, Nelson, as his confederate. At their joint trial, the police officer was allowed to testify to Runnels' statement. Taking the stand in his own defense, Runnels denied ever making the statement, and proceeded to testify favorably to himself and Nelson.

Here, Manuel Tacho, like Runnels, made an unsworn, out-of-court statement to the police, implicating the appellant. On the stand, however, he denied ever making the statement, and proceeded to give testimony favorable—or at least not damaging—to appellant. The only difference between these facts and the facts in *Nelson* is that Manuel is not a codefendant, a difference we do not consider significant in view of the language of the United States Supreme Court in *Nelson*.

Citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court said:

> "The Constitution . . . is violated *only* where the out-of-court hearsay statement is that of a declarant . . . unavailable at the trial for 'full and effective' cross-examination." *Nelson v. O'Neil,* 91 S.Ct. 1723, 1726.

We view the question herein as the same as in *Nelson:*

> ". . . [W]hether cross-examination can be full and effective where the declarant is present at the trial, takes the witness stand, testifies fully as to his activities during the period described in his alleged out-of-court statement, but denies that he made the statement and claims that its substance is false." *Nelson v. O'Neil,* 91 S.Ct. 1723, 1726.

There is no question that our answer is the same:

> ". . . [W]here a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." *Nelson v. O'Neil,* 91 S. Ct. 1723, 1727.

We hold, in light thereof, that the admission of out-of-court statements attributed to Manuel Tacho, but denied by him, did not deprive appellant of his Sixth Amendment right to confrontation, where appellant had the opportunity to fully and effectively cross-examine Manuel Tacho at trial.

## DEPRIVATION OF FAIR TRIAL AND DUE PROCESS OF LAW

Appellant asserts, essentially, that because of Detective Johnson's threats to the witness Federico about perjury and his untrue statements about available physical evidence, Federico's testimony was given under duress and coercion; that there was an abuse here of governmental power so offensive as to deprive the appellant of a fair trial. Further, appellant asserts that, after hearing these facts adduced at trial, the trial court had the obligation, sua sponte, to recess the trial, hold a hearing regarding the voluntariness of the testimony of the witness Federico, and make findings in that regard. Appellant cites no authority for this second assertion and virtually admits there is none.

Three important facts are apparent from a reading of the record. First, Detective Johnson tape-recorded his conversation with Federico regarding the perjury threats and physical evidence assertion. Secondly, appellant's counsel was aware of the tape recordings which were referred to in the transcripts from the first trial and had, in all likelihood, heard them before the second trial ever began. While questioning Detective Johnson on cross-examination during the second trial, defense counsel asked this question:

> "And I asked you to look for certain things which I thought I heard in that tape, did I not?"

Tape recordings made by Detective Johnson were mentioned by defense counsel to the second witness called by the state, early in the second trial, which gives further credence to the fact that, at the very least, appellant was aware of them, and what they contained, before both witnesses Federico and Johnson were called to testify later in the second trial.

The third important fact is that neither at trial nor before did appellant raise any objection to the testimony of either Federico or Johnson and, in fact, thoroughly cross-examined both at the second trial with regard to the "threat" conversation here in question.

 If, having knowledge of the policeman's conversation with Federico, the appellant failed before trial to move to suppress Federico's testimony, or failed to object at the time he was on the stand, he has waived his right to do so on appeal.

**384**

*State v. Vitale,* 23 Ariz.App. 37, 530 P.2d 394 (1975).

 It is well-established law in Arizona that failure to object to an offer of evidence is a waiver of any ground of complaint against its admission, *State v. Gonzales,* 111 Ariz. 38, 523 P.2d 66 (1974), and asserted error in the admission of evidence cannot be raised for the first time on appeal unless the error was fundamental. *State v. Wilcynski,* 111 Ariz. 533, 534 P.2d 738 (1975), *cert. denied,* 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975).

 With regard to the implication not directly raised as an issue, but which we shall meet, that there was such governmental abuse so as to deprive appellant of a fair trial and due process of law, we answer that, after reviewing the record, we see no such abuse. We do not see any conduct by the state's agents which is so improper or so outrageous as to shock the conscience of the court and amount to a denial of appellant's rights.

> ". . . [D]enial of due process 'as applied to a criminal trial . . . is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it . . . [the Court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial.' *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 . . . ." *State v. Maldonado,* 92 Ariz. 70, 76, 373 P.2d 583, 587 (1962), *cert. denied,* 371 U.S. 928, 83 S.Ct. 299, 9 L.Ed.2d 236 (1962).

*See also State v. Taylor,* 112 Ariz. 68, 537 P.2d 938 (1975), *cert. denied,* 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976).

We therefore hold that appellant's Sixth and Fourteenth Amendment rights to a fair trial and due process of law were not violated.

Judgment of conviction and sentence affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.