616 P.2d 959

STATE of Arizona, Appellee,

v.

Thomas W. NEESE, Appellant.

STATE of Arizona, Appellee,

v.

Albert DURAN, Appellant.

Nos. 1 CA–CR 3880, 1 CA–CR 3873.

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 14, 1980.

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Jessica L. Gifford, Asst. Atty. Gen., Phoenix, for appellee.

Jim D. Smith, Yuma, for appellant Duran.

George A. Rouff, Yuma, for appellant Neese.

## OPINION

DONOFRIO, Judge.

Appellants Albert Duran and Thomas W. Neese were convicted of conspiracy to violate the marijuana laws of Arizona, specifically A.R.S. § 13–331(A) as amended, and A.R.S. § 13–332. They were each sentenced to prison for a term of not less than four nor more than twelve years. In this consolidated appeal appellants challenge both their respective judgments of guilt and sentences.

## REDETERMINATION OF PROBABLE CAUSE

Appellants contend that the trial court committed reversible error in denying their motion for redetermination of probable cause based upon claims of impropriety in the grand jury proceedings. We disagree.

Arizona Rules of Criminal Procedure, Rule 12.9(b) provides:

"Timeliness.

A. A motion under Rule 12.9(a) may be filed only after an indictment is returned and no later than 25 days after the transcript and minutes of grand jury proceedings have been filed."

The relevant facts follow. On September 20, 1978 Duran filed a motion for a new finding of probable cause. On November 9, 1978 Thomas Neese joined in that motion. At the omnibus hearing on November 27, 1978 the court considered the motion on the merits and denied same. For the first time on appeal the state contends that the court should not have considered it on its merits because the motion was not timely under Rule 12.9(a). At least part of the grand jury transcript was filed on August 23, 1978. Duran's motion for a new finding of probable cause was more than 25 days after this date; however, Duran contends that Vols. III and IV were filed with the court on August 31, 1978 and therefore his motion was timely. The motion of appellant Neese was clearly outside this time limit. The date of the indictment was July 28, 1978.

While it appears that there is some validity to the timeliness argument, we will nevertheless consider the issue on its merits because the state raises this argument for the first time on appeal.

Appellants contend that they were entitled to redetermination of probable cause because of off–the–record conversations in the grand jury proceedings. Appellants point to the following portions of the grand jury transcript:

"MR. IRWIN: Larry, while you are looking for that, why don't we take a ten–minute break.

(Whereupon a brief recess was taken, after which the following proceedings were had.)

MR. IRWIN: I don't want to get into something that shouldn't be—off the record.

(Off–the–record discussion, after which the following proceedings were had.)

THE WITNESS. Okay. So when we look at the numbers like that. If we don't have them, it's because they're non–published and we haven't subpoenaed them as far as calling them, we're afraid to notify these people, because we're looking after our witnesses and trying to get enough where we can come before the Grand Jury and actually present the case to you.

Mr. Spain inquired as to the time of death of Mr. Sandate. Approximately 9:15 in the morning on the 27th. I can give you some additional facts.

MR. IRWIN: Excuse me, Larry, for interrupting.

Just prior to going on to—one of the grand jurors which was Dolores Lauritzen, asked Mr. Wheeler off the record some way to use telephone addresses to get some of the unknown phone numbers and he explained to her that that has been done, and it was at that time that we went back on the record.

Okay. Go ahead."

Further, appellants claim that there may have been other off–the–record discussions not reflected in the transcript because one of the grand jurors, Mrs. Hunter stated in the record, "I didn't know this was going to be on the record."

■ The above excerpted language from the grand jury transcript show that there was an off–the–record conversation between a witness and one of the grand jurors. The question we must answer is whether the denial of appellants' motion to redetermine probable cause constitutes reversible error. We hold that it does not.

In *Wilkey v. Superior Court*, 115 Ariz. 526, 566 P.2d 327 (App.1977), Division Two of the Arizona Court of Appeals reversed the trial court's denial of the defendant's motion for redetermination of probable cause in a special action. In discussing the conduct of grand jury proceedings the court said:

"*All* proceedings are to be recorded except the jury's deliberations. Recording during a formal recess is not required . . . where the jurors are not to discuss the case with each other, let alone with a witness or the prosecutor. No conversation is to be allowed between jurors and witnesses during a recess. No off–the–record conversation is to be allowed between the jurors and the prosecutor regarding the case or any legal aspect of it. All actions of the prosecutor and the juror should be susceptible to review to ensure to the defendant an impartial, just and unbiased hearing."

*Id.* at 528, 566 P.2d at 329.

The above excerpted portion of the grand jury transcript shows an off–the–record discussion between a witness and a grand juror. In light of *Wilkey* we do not approve the trial court's ruling on the motion, however, this does not rise to the magnitude of reversible error in the current posture of this case.

■ Appellants were tried and convicted of conspiracy to violate the marijuana laws. They contend now that the entire judicial process should be started all over again because of an isolated incident of non–transcription. We have reviewed all the precedent in this jurisdiction and have found no case reversing a conviction based on this type of error. In *State v. Lenahan*, 12 Ariz.App. 446, 471 P.2d 748 (1970), involving a similar situation Division Two of this court refused to reverse. In *Lenahan* appellant claimed that reversible error was committed in her preliminary hearing. The court disagreed and said:

"The purpose of a preliminary hearing is to determine whether there is probable cause that defendant caused the offense charged in the information *State v. Pima County Superior Court*, 103 Ariz. 369, 442 P.2d 113 (1968); *State v. Martin*, 5 Ariz. App. 524, 428 P.2d 699 (1967).

\*     \*     \*     \*     \*     \*

We do not believe that defendant can point to any defect in a preliminary hearing which is curable at this point in the proceeding. This court has held that certain standards of case presentation apply to a preliminary hearing. However, short of a jurisdictional defect in the subject matter . . . we are compelled to hold that, generally speaking, errors at a preliminary hearing must be remedied prior to trial. *State v. Cuzick*, 5 Ariz. App. 498, 428 P.2d 443 (1967). Once trial is over and properly completed, a 'nonjurisdictional' error at a preliminary hearing is lost."

*Id.* at 449, 471 P.2d at 751. The logic in *Lenahan* is compelling. The purpose of a preliminary hearing and a grand jury proceeding is the same. They are to determine whether there is probable cause to believe the individual committed an offense. Prior

to trial the question of whether probable cause exists is an open one, however, after a full scale trial in which a jury determines guilt beyond a reasonable doubt the question is closed. *See generally: State v. Canaday*, 117 Ariz. 572, 574 P.2d 60 (App.1977); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (concurrence of Justice White).

Had this issue arisen in a special action proceeding we would feel constrained to follow *Wilkey*, however, in light of the foregoing and our review of the grand jury transcript we find no reversible error. We have considered appellants' other claims of grand jury improprieties and find no merit to them.

## VARIANCE

■ Appellants' second claim on appeal is that the trial court erred in failing to grant their motions for directed verdict of acquittal on the grounds of variance of proof from the charge in the indictment. We hold the trial court did not err.

■ In *State v. Mosley*, 119 Ariz. 393, 402, 581 P.2d 238, 247 (1978), our Supreme Court discussed when a trial court is required to grant such a motion.

"Our review is limited to the preliminary question of whether the trial court erred in failing to grant a judgment of acquit-

tal. Under 17 A.R.S. Rules of Criminal Procedure, rule 20, the trial court must do so 'if there is no substantial evidence to warrant a conviction.' Thus, the trial court has no duty to direct an acquittal where there is substantial evidence that a defendant has committed the crime charged. *State v. Ortiz*, 115 Ariz.App. 43, 563 P.2d 298 (1977). A directed verdict should not be granted if the evidence is such that reasonable minds may differ on the inferences to be drawn therefrom. *State v. Latino*, 25 Ariz.App. 66, 540 P.2d 1285 (1975). Such evidence may be either circumstantial or direct. See *State v. Turrubiates*, 25 Ariz.App. 234, 542 P.2d 427 (1975).

Stated another way, it is error for a trial court to deny a motion for directed verdict of acquittal only where there is no substantial evidence to warrant a conviction. We have reviewed the entire record of the proceedings below and when viewed most strongly in favor of upholding the verdict of the jury, *State v. Stevens*, 107 Ariz. 565, 490 P.2d 571 (1971), we find there is substantial evidence that the appellants committed the crime charged.

Appellants' variance theory is premised upon their claim that while the indictment charged a single count of conspiracy to violate the marijuana laws[1], the evidence ad-

---

1. The indictment provides as follows:
In the name and by the authority of the State of Arizona ALBERT DURAN, JOANNE BIGSBY, LARRY WAYNE RICHARDSON, KENNETH C. LIEBING, THOMAS W. NEESE and BEATRICE DURAN are are [sic] accused by the Grand Jurors of the County of Yuma; State of Arizona by this indictment of the crime of felony, to–wit: Conspiracy in the First Degree, committed as follows, to–wit:
Commencing on or about late 1969, and continuing thereafter until the date of the indictment, in the County of Yuma, State of Arizona; ALBERT DURAN, . . . Thomas K. Neese, . . . [and five others] named in this indictment as defendants and . . . [naming 34 individuals] named in this indictment as co–conspirators, and [naming five individuals] named in this indictment as co–conspirators, but not as co–defendants did knowingly and intentionally conspire and agree together and with others whose names and identifies are unknown, to engage in or cause the commission of the offenses enumerated in Chapter 9 of

Title 36 of the Arizona Revised Statutes, namely Possession of Marijuana for Sale, Transportation of Marijuana and Importation of Marijuana, in violation of A.R.S. §§ 13–331A, as amended and 13–332.
In addition, in furtherance of said conspiracy, the following and other overt acts occurred, at least one of which was in the County of Yuma, State of Arizona:
In September, 1973, Becky Duran rented a house at 900 6th Street, Yuma, Arizona to be used as a stash house.
In November, 1973, George Sanchez, Sr. transported, in a vehicle, 238 kilo bricks of marijuana within Yuma County.
In September, 1975, Jose Lopez drove a car from Central Market on 3rd Street and 4th Avenue in Yuma, Arizona loaded with marijuana.
In September, 1975, Albert Duran paid Jose Lopez $200.00 cash for driving the load of marijuana from Central Market.
In February, 1976, through the summer months of 1976, Stanley Watkins used his home located

duced at trial established either various substantive marijuana violations or a multiple of independent conspiracies, but not one large single conspiracy.

At the outset we wish to make clear the effect of variance of proof from the indictment. In *United States v. Lyman,* 592 F.2d 496 (9th Cir. 1978), the court stated:

"We have held that in order to constitute grounds for reversal, a variance between proof and indictment must affect the substantial rights of the defendant by preventing him from presenting his defense properly, taking him unfairly by surprise, or exposing him to double jeopardy. *United States v. Bolzer,* 556 F.2d 948, 950 (9th Cir. 1977); *United States v. Anderson,* 532 F.2d 1218, 1227 (9th Cir.), cert. denied, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976)."

*Id.* at 500–501. The test for fatal variance was articulated in *United States v. Durades,* 607 F.2d 818, 819 (9th Cir. 1979), as follows:

"A conviction must be reversed 'if the variance between the indictment and the proof affects the substantial rights of the parties.' *United States v. Friedman,* 593 F.2d 109, 116 (9th Cir. 1979). First we must ask whether there was, in fact, a variance. If there was, we must then answer a second question: was the variance prejudicial?"

We first must determine whether there was a variance. The indictment charged a conspiracy from late 1969 continuing until the date of the indictment in July, 1978, and alleged a series of overt acts running from 1973 through 1976. The evidence shows that appellants Neese and Duran were the leaders and organizers of a large illicit marijuana trafficking business. There was testimony as to the trafficking of thousands of pounds of marijuana between the years 1973 through 1976 by numerous people at the direction of appellants. Further, there

was substantial evidence to establish that the overt acts listed in the indictment took place.

The recent case of *United States v. Tilton,* 610 F.2d 302 (5th Cir.1980) is instructive on the point of what a court should look for in determining whether an overall conspiracy is established or if the evidence shows multiple conspiracies.

"The principal factors that this court examines when resolving the issue of a prejudical variance are the existence of a common goal, the nature of the scheme, and an overlapping of participants in the various dealings, *United States v. Becker,* 569 F.2d 951 (5 Cir. 1978), cert. denied, 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1979); *United States v. Morrow,* 537 F.2d 120 (5 Cir. 1976), cert. denied, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977); *United States v. Perez,* 489 F.2d 51 (5 Cir. 1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974)."

*Id.* at 307. The evidence in the record before us clearly establishes that the activities of Duran and Neese over the years 1973–76 were for the common goal of profiting from the illegal dealings in enormous quantities of marijuana. Their scheme involved the repeated employment of many people to accomplish their goal. As in the case of *United States v. Sperling,* 506 F.2d 1323 (2nd Cir. 1974), there is abundant evidence that Duran and Neese joined together in an integrated loose–knit combination to purchase and sell large quantities of drugs at a profit.

Appellants' contend that there was a fatal variance because (1) the evidence at trial did not concern the years 1969 through early 1973 and 1977 through 1978 and (2) because a large number of coconspirators were not mentioned in any of the testimony. We disagree. The testimony established an on going single conspiracy be-

---

at Highway 95 and Avenue 5–E, in Yuma County, Arizona as a stash house.

On May 23, 1976, Jose Lopez drove a pick–up truck containing 276 kilo bricks of marijuana to his residence located within Yuma County, Arizona.

\*   \*   \*   \*   \*   \*

All of which is contrary to the form, force and effect of the statute in such cases made and provided, and against the peace and dignity of the State of Arizona.

tween the appellants and others to engage in drug trafficking.

Assuming arguendo that there was a variance between the evidence adduced at trial and the indictment, appellants have failed to show any substantial impairment of their rights. The appellants have not claimed that they were prevented from presenting their defenses properly, or that they were taken by surprise or that they are being exposed to double jeopardy. The only arguable claim of prejudice advanced by appellants is the impact of the amendment of the conspiracy statute[2] over the years 1969 until their indictment. Appellants claim that small conspiracies during the nine-year period would have been punished differently than one large conspiracy over the entire period. We reject appellants' claim of prejudice. In *United States v. Noah*, 475 F.2d 688 (9th Cir. 1973), the court was faced with the problem of amendments to statutes during the period of defendant's conspiratorial conduct. The government charged two counts of conspiracy—one for a conspiracy up to the date of amendment and a second conspiracy under the amended statute. Appellant was convicted on both counts and in vacating the conviction under the first count (the prior statute) the court said:

"Presenting evidence of violations of different statutes does not create separate conspiracies out of one conspiracy. The gist of the crime of conspiracy is an agreement to commit unlawful acts. 'The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.' *Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942)."

*Id.* at 693. *See also: United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974).

The theme running through all the cases dealing with variance is that no relief is granted absent a showing of both variance and prejudice by the aggrieved party. This is consistent with the Arizona Constitution, Art. 6, § 27, which provides that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."

Finding an absence of prejudice and the presence of substantial evidence that Duran and Neese committed the conspiracy as charged, we hold the trial court properly denied appellants' motions for directed verdict of acquittal.

## SUPPRESSION OF EVIDENCE

On or about January 30, 1976, a trailer on an island in the Colorado River was searched by California law enforcement officers. Appellants contend that the trial court committed reversible error in admitting certain exhibits[3] into evidence because they were the product of an illegal search of that trailer. Appellants also claim that the exhibits were "surprise" evidence and therefore the trial court erred in admitting them without an evidentiary hearing as to admissibility. We disagree on both points.

In support of their claim that the search was illegal and therefore the exhibits should have been excluded appellants cite *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The court in *Mapp*

---

2. The following table indicates the change in punishment for conspiracy over the years 1969–1978 applicable to the charge involved here.

| | |
|---|---|
| Pre-1971 | maximum 1 year imprisonment or fine not in excess of $1000 |
| 1971–75 | not less than 1 nor more than 4 years imprisonment or fine not exceeding $1000 |
| 1975–78 | maximum 30 years imprisonment |
| October 1978–present | maximum 7 years imprisonment |

3. Appellants object to the admission of the following exhibits: # 14–photo of a large scale with kilo bricks taken in the subject trailer; # 15–photo of stack of kilo bricks taken inside the trailer; # 16–photo of the back license plate of the trailer which shows the Arizona # FT–5146; # 17–photo inside the trailer showing Arizona license plate # B–21294; and # 19–document of title registration to the trailer showing Albert Duran as the registered owner.

reversed the appellant's conviction for possession and control of obscene material because of an unlawful search and seizure and noted that the state neither produced a warrant nor explained its failure to produce one. The court pointed out that there was "considerable doubt as to whether there even was any warrant for the search of defendant's home." *Mapp* was a retreat from earlier decisions and held that the exclusionary rule was applicable to state prosecutions.

"We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.

#### IV.

Since the Fourth Amendment's rights to privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government."

*Id.* at 655, 81 S.Ct. at 1691, 6 L.Ed.2d at 1090.

■ The fact that the exclusionary rule is an enforcement mechanism applicable in state prosecutions does not excuse appellants' failure to comply with state procedures governing the suppression of evidence. 17 A.R.S., Rules of Criminal Procedure, rule 16.1 provides:

"Rule 16.1 General provisions

a. Scope of Rule. This rule shall govern the procedure to be followed in cases in the Superior Court between arraignment and trial unless specifically provided by another rule. Rules 16.1 and 16.2 shall apply to criminal proceedings in all courts.

b. Making of Motions Before Trial. *All motions shall be made no later than 20 days prior to the date set for trial.* Lack of jurisdiction may be raised at any time. An omnibus hearing will be held only if affirmatively requested in writing by either or both parties within 30 days of the date of arraignment in the Superior Court. The omnibus hearing shall be set

at the earliest convenient date following the filing of the request but no later than 20 days prior to the trial date.

c. Effect of Failure to Make Motions in Timely Manner. *Any motion, defense, objection, or request not timely raised under Rule 16.1(b) shall be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it.* * * *" (Emphasis supplied)

In *State v. Lee*, 25 Ariz.App. 220, 224, 542 P.2d 413, 417 (1976), this court discussed the applicability of Rule 16 to constitutional types of objection.

"[T]he comments to Rule 16 state that the intent of the new rule is to overrule the holding of *State v. Kananen*, 97 Ariz. 233, 399 P.2d 426 (1965), in which the Arizona Supreme Court held that a defendant was not precluded by his failure to make a pretrial suppression motion from objecting to the admission of illegally obtained evidence at trial. Rule 16 is thus applicable to constitutional objections."

Our Supreme Court stated in *State v. Griffen*, 117 Ariz. 54, 56, 570 P.2d 1067, 1069 (1977), that suppression issues must be timely raised or they are waived.

"There is a legitimate State interest in the orderly presentation of suppression issues. *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). And see *State v. Tacho*, 113 Ariz. 380, 555 P.2d 338 (1976). Suppression issues will be waived where not timely treated."

■ Appellants did not move to suppress the subject exhibits until the second day of trial. This was clearly untimely under Rule 16.1(b), however, appellants argue that this was timely and falls within Rule 16.1(c) because the basis for their motions was not known to them until the state moved to have the exhibits admitted into evidence. We disagree and find the motions untimely.

In support of their argument, counsel for appellants argued, *inter alia*, that they had

reviewed the discovery materials and had relied on an officer's affirmative statement that the search was "bad" and were under the impression that the state wasn't going to use the evidence; that based on the officer's statement about the search a second "determination" was required; that the state had the burden to produce the California search warrant; that the search was "bad" because it was pursuant to a California warrant but took place on Arizona land; and that the disclosed materials did not provide anything that indicated that the state was going to use any evidence obtained in the search.

To have the evidence suppressed because of an improper search, appellants were required to get a judicial determination of the legality of the search. Appellants could not simply rely on the narcotic officer's evaluation of the propriety of the search and thereby become entitled to refuge under Rule 16.1(c) from the requirements of Rule 16.1(b). Had appellants moved timely the comments of the officer may have been germane to the court's resolution of the issue but cannot, of themselves, excuse non–compliance with the rule.

We have reviewed the record and find that the disclosures of the state adequately put appellants on notice that the evidence from the search might be offered at trial. A diligent review of the state's witness list would have revealed to appellants that the California officers who searched the trailer were listed as prospective witnesses and this alone should have put them on notice. The listing of these witnesses in conjunction with the other disclosures forecloses a claim of "surprise" by appellants.

■ We reject appellants' claim that the state was required to produce the California search warrant when requested on the second day of trial. Had the appellants timely moved to suppress the evidence they may have put the state to the task of showing the propriety of search, however, all attacks on the warrant and the search were waived by the non–compliance with Rule 16.1. This being the case the appellants were not entitled to an evidentiary hearing on the admissibility of the subject exhibits.

## ARTICLES OF INCORPORATION

■ Over objection of appellants as to relevancy, the trial court admitted the articles of incorporation of San–Dur–By, Incorporated. Appellants claim this constitutes reversible error. We disagree and hold that it was proper for the court to admit this evidence.

On or about May 23, 1976, Jose Lopez was arrested when approximately 277 kilos of marijuana were taken from a truck located near his residence. The truck was registered to San–Dur–By Corporation.

The articles of incorporation listed Bigsby (an alias used by Neese), Duran and Ramon Sandate, since deceased, as incorporators. Appellants claim that the articles of incorporation should not have been admitted because they were irrelevant to the question of who were the principals of the corporation. Appellants argue that proving who the incorporators are does not prove that those people are the owners of the corporation. They also point out that in June 1976 the charter San–Dur–By, Incorporated was revoked for failure to do anything with the corporation.

In *State v. Tulipane,* 122 Ariz. 557, 558, 596 P.2d 695, 696 (1979), our Supreme Court articulated the standard for review of evidentiary rulings:

"The trial court is allowed reasonable discretion in determining the admissibility of evidence, and such discretion will not be disturbed on appeal unless it has been clearly abused. *State v. Macumber,* 119 Ariz. 516, 582 P.2d 162 (1978); *State v. Mosely,* 119 Ariz. 393, 581 P.2d 238 (1978).

Arizona Rules of Evidence, rule 401 defines relevant evidence as follows:

"Rule 401. Definition of 'Relevant Evidence'

'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In *Reader v. General Motors Corporation*, 107 Ariz. 149, 155, 483 P.2d 1388, 1394 (1971), the Supreme Court said:

"By the general rule, evidence is relevant if it has any basis in reason to prove a material fact in issue. *It is not necessary that such evidence be sufficient to support a finding of an ultimate fact; it is enough if the evidence, if admitted, would render the desired inference more probable* (citation omitted)." (Emphasis supplied)

In the case at bar, appellants were charged with conspiracy to violate the marijuana laws. A material fact to proving that charge is the relationship and association between Duran and Neese. The articles of incorporation listing Duran and Neese as incorporators, taken in conjunction with the fact that the truck containing marijuana was registered to San–Dur–By, Incorporated, makes the inference of their conspiratorial association more probable. Merely because the articles of incorporation standing alone cannot establish a conspiracy does not make the document irrelevant.

Appellants' arguments go to the weight of the evidence, not the admissibility. The cases they cite deal with sufficiency of evidence claims as distinguished from relevancy issues and therefore lend no support to their position. The articles of incorporation were properly admitted.

## SENTENCES

■ Appellants were each sentenced to a term of imprisonment of not less than four nor more than twelve years. They argue that their respective sentences were excessive and should be reduced by this court. We disagree.

A.R.S. § 13–331, as amended, which governs the punishment of appellants' crimes, provided for a maximum punishment of not more than thirty years imprisonment. Despite the fact that the sentences imposed were under the above statute, appellants urge that we exercise our power to reduce them. In *State v. Patton*, 120 Ariz. 386, 586 P.2d 635 (1978), our Supreme Court discussed the role of appellate courts in sentence review cases:

"A.R.S. § 13–1717B [4] provides this Court with the power to reduce a defendant's punishment if, in its opinion, the punishment imposed is greater than the circumstances of the case merit. The imposition of a penalty upon conviction, however, is entirely within the discretion of the trial judge and will not be reduced unless it clearly appears that the sentence imposed is excessive, resulting in an abuse of discretion. *State v. Castano*, 89 Ariz. 231, 360 P.2d 479 (1961); *State v. Pickard*, 105 Ariz. 219, 462 P.2d 87 (1969). Moreover, 'discretion' in its legal context has been held to mean a 'sound discretion.' An abuse of discretion occurs when the decision is characterized by capriciousness or arbitrariness or by a failure to conduct an adequate investigation into the facts necessary for an intelligent exercise thereof. *State v. Douglas*, 87 Ariz. 182, 349 P.2d 622 (1960). The power of this Court to modify sentences should further be tempered by the realization that a defendant appears in person before the trial judge, rendering that judge, in most instances, more able than ourselves to evaluate the defendant and his circumstances. *State v. Smith*, 107 Ariz. 218, 484 P.2d 1049 (1971); *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976)."

*Id.* at 388, 586 P.2d at 637.

We find no abuse of discretion and therefore uphold the sentences as imposed.

The judgments of guilt and sentences are affirmed.

FROEB, P. J., and YALE McFATE, Judge, Retired, concur.

■

---

4. Renumbered as A.R.S. § 13–4037(B) effective October 1, 1978.