NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BETTY MARIE VANHEEMSKERCK, *Appellant.*

No. 1 CA-CR 24-0518

FILED 12-03-2025

Appeal from the Superior Court in Mohave County
No. S8015CR202300376
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Madeline Shupe
*Counsel for Appellee*

Jill L. Evans, Flagstaff
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Vice Chief Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

---

**P E R K I N S**, Judge:

**¶1**　　　Betty Marie Vanheemskerck appeals from her conviction for one count of conspiracy to possess dangerous drugs for sale. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　A joint state and federal law enforcement task force investigated drug trafficking in Mohave County in 2021 and 2022. In the fall of 2022, the task force began tracking the phone location data of some targets and used a court-authorized wiretap to monitor the communications of multiple phone lines. All wiretaps concluded by the end of November 2022.

**¶3**　　　Law enforcement monitored the wiretaps from a secure location, observing strict security protocols to protect the information. And law enforcement controlled access to the location, computer systems used for monitoring, and the special software that recorded the conversations. Professional linguists monitored the calls in real time and created summary translations for Spanish-language conversations. Those linguists were subject to ongoing side-by-side training with more experienced linguists and work-product quality control in the form of spot-checks and inspection by supervisors. The recordings could not be modified. At the end of a wiretap, the recordings were sealed and copies provided to the court and the prosecution.

**¶4**　　　The wiretaps generated thousands of records of calls and text messages. Among them were communications between Sean McCarthy, whose phone was tapped, and someone he called "Miss Betty" or "Betty." The intercepted calls and messages contained coded language that law enforcement associated with the procurement of drugs for sale. They also captured arrangements for subsequent meetings between the two.

**¶5**　　　Based on the information obtained from the wiretap, the investigators visited Vanheemskerck at her house in January 2023. She was

given *Miranda* warnings and told that the task force had built a case against her. During the meeting, Vanheemskerck both denied and admitted that she "middled" drug deals for McCarthy—buying drugs from him and selling them to others. The State indicted Vanheemskerck and 12 others on a variety of drug trafficking charges. The other defendants entered plea agreements, and Vanheemskerck stood trial alone.

**¶6** At trial, multiple law enforcement officers testified to the common meaning of the code words used by Vanheemskerck and the co-conspirators. After the prosecution rested, Vanheemskerck moved for directed verdict on all four counts charged. The superior court granted the motion in large part and dismissed all counts except conspiracy to possess dangerous drugs for sale. *See* Ariz. R. Crim. P. 20. The jury found Vanheemskerck guilty and found two aggravators. The court then imposed a 15-year aggravated sentence.

**¶7** Vanheemskerck timely appealed, and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

**¶8** Vanheemskerck challenges the sufficiency of the evidence, the court's jury instructions, the constitutionality of the trial proceedings, and her sentence.

### I. Sufficiency of the Evidence

**¶9** Vanheemskerck claims the evidence was insufficient for the jury to find her guilty of conspiracy to possess dangerous drugs for sale. We review the sufficiency of evidence *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). We will not reweigh the evidence but view it in the light most favorable to sustaining the conviction and draw all reasonable inferences against the defendant. *State v. Lee*, 189 Ariz. 608, 615 (1997). The record must contain substantial evidence, which is proof that a reasonable person could accept as enough to establish guilt beyond a reasonable doubt. *West*, 226 Ariz. at 562, ¶ 16. The court may consider both direct and circumstantial evidence. *Id.*

**¶10** Conspiracy to possess dangerous drugs for sale requires that the defendant (1) with intent to promote or aid the possession of dangerous drugs for sale, (2) agrees with one or more persons that at least one of them or another person would possess dangerous drugs for sale, and (3) one of the parties commits an overt act in furtherance of the offense. *See* A.R.S. §§ 13-1003(A), -3407(A)(7). Methamphetamine is a dangerous drug. A.R.S.

§ 13-3401(6)(c)(xxxviii). The statutory threshold amount for sale is nine grams. A.R.S. § 13-3401(36)(d).

¶11      The jury heard ample evidence to support its verdict. The wiretap of McCarthy's phone calls and text messages revealed his discussions about drug purchases with "Betty." Vanheemskerck confirmed that McCarthy called her Betty and that her phone number matched the one used by McCarthy's Betty. During these communications, Vanheemskerck used coded language to ask McCarthy whether he had drugs for sale before negotiating the sale price and quantity. Law enforcement officers testified, based on their experience and training, that the coded language was consistent with negotiations for the sale of drugs in amounts greater than the threshold amount for sale and inconsistent with purchases for personal use. McCarthy's phone location data, his communications with Vanheemskerck, and Vanheemskerck's own statements to law enforcement confirmed that both traveled to an apartment complex on October 14, 2022, to meet and complete their agreed-upon transaction. This evidence showed Vanheemskerck undertook overt actions in furtherance of the conspiracy.

¶12      Substantial evidence supports the conspiracy conviction.

## II.      Challenges Based on the Nature of the Conspiracy

¶13      Vanheemskerck raises additional arguments based on her claim that the evidence pointed to the existence of multiple conspiracies—one main conspiracy that encompassed the drug-trafficking activities of all other co-conspirators, and a separate one between only Vanheemskerck and McCarthy.

¶14      Even if Vanheemskerck had correctly identified a separate conspiracy, it would not have changed the outcome. A person guilty of conspiracy that "knows or has reason to know" that the person she conspires with has conspired with others to commit the same offense "is guilty of [conspiracy] with such other person or persons, whether or not [she] knows their identity." A.R.S. § 13-1003(B). The record has substantial evidence of Vanheemskerck and McCarthy discussing drug sales on more than one occasion, and she knew he had access to drugs. Whether Vanheemskerck directly communicated with or knew the names of McCarthy's suppliers is irrelevant.

### A.  Wharton's Rule

¶15      Vanheemskerck claims that Wharton's Rule bars her conviction because even if the evidence supports a conspiracy with

McCarthy, it does not support that she conspired with anyone else to assist in the offense. She argues the court erred by failing to offer a Wharton's instruction. Because Vanheemskerck did not raise this issue at trial, we review for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018).

**¶16** Wharton's Rule prohibits a defendant from being convicted of a conspiracy to commit a crime if the conspiracy merges with the substantive crime, meaning it can only be committed by the concerted efforts of the same two people who entered into the initial agreement. *State v. Barragan-Sierra*, 219 Ariz. 276, 284, ¶ 23 (App. 2008). But the rule does not apply when the agreement extends beyond the initial two parties. *State v. Chitwood*, 73 Ariz. 161, 166 (1951).

**¶17** Wharton's Rule does not apply here because the evidence showed more than two people were involved in the conspiracy. The State charged Vanheemskerck with the overall conspiracy and offered substantial evidence of her role as one of many participants in the drug trafficking scheme.

## B. Multiple Conspiracies Instruction

**¶18** Vanheemskerck claims the superior court should have offered a multiple-conspiracies jury instruction because the trial evidence supported only a "minor conspiracy" with McCarthy that was separate from the overall conspiracy charged. Vanheemskerck did not request the instruction at trial, so we review for fundamental error. *See Escalante*, 245 Ariz. at 140, ¶ 12.

**¶19** A multiple-conspiracies jury instruction aims to avoid prejudice when the indictment charges one overall conspiracy, but the trial evidence shows multiple independent conspiracies. *See State v. Neese*, 126 Ariz. 499, 504 (1980) (explaining the prejudicial effect of such "variance"). Differences between the charging document and trial evidence are grounds for reversal only when they affect the defendant's substantial rights. *Id.*

**¶20** Separate agreements to sell drugs can establish the factual bases for multiple conspiracies. *See State v. Gaydas*, 159 Ariz. 277, 278–279 (App. 1988). But "[a] person who conspires to commit a number of offenses is guilty of only one conspiracy if the multiple offenses are the object of the same agreement or relationship." A.R.S. § 13-1003(C). To determine whether the evidence established one overall conspiracy or multiple conspiracies, we consider (1) "the existence of a common goal," (2) "the

nature of the scheme," and (3) "an overlapping of participants in the various dealings." *Neese*, 126 Ariz. at 504.

**¶21** Vanheemskerck coordinated drug purchases for profit with McCarthy. She shared that common goal with McCarthy and the other co-conspirators. And the organizational scheme was typical: different people had access to different drug quantities, often operating without communicating with or even being aware of the identity of other participants. While McCarthy was the overlapping participant linking Vanheemskerck to the overall conspiracy, all co-conspirators overlapped as participants in the same sales network. And whether Vanheemskerck's multiple drug orders placed on different days constituted multiple offenses that were the object of the same relationship was a question of fact for the jury. *See Gaydas*, 159 Ariz. at 279; A.R.S. § 13-1003(C). We defer to the jury's findings that the evidence was consistent with the overall conspiracy. The court did not err by failing to instruct the jury on multiple conspiracies.

### C. Special Verdict Form to Elect Conspiracy

**¶22** Vanheemskerck claims the State offered evidence of multiple offenses under the same count, and thus the court should have provided a verdict form asking the jury to elect which conspiracy applied. She argues that failing to do so deprived her of the right to a unanimous jury verdict. But she did not request a special verdict form at trial, so we review for fundamental error. *See Escalante*, 245 Ariz. at 140, ¶ 12.

**¶23** Vanheemskerck's argument again hinges on finding separate conspiracies, based on the introduction of multiple acts to prove one charge. But the court has no obligation to provide instructions (or forms) when the separate acts are part of a single criminal transaction. *State v. Klokic*, 219 Ariz. 241, 244, ¶¶ 14–15 (App. 2008). Here, we again defer to the jury's findings that the evidence was consistent with one overall conspiracy. The court did not err by not providing a special verdict form *sua sponte*.

### III. Alleged Constitutional Violations

**¶24** Vanheemskerck argues that by allowing a substitute expert witness to testify about the accuracy of the Spanish-English translation summaries of McCarthy's phone calls and text messages, and by admitting those calls and summaries, the court violated her constitutional right to confrontation. And she claims related violations of her rights to due process, to a fair trial, and to prepare and present a complete defense.

**¶25**        Vanheemskerck did not object on Confrontation Clause grounds, although she repeatedly raised hearsay objections. But hearsay objections do not preserve Confrontation Clause claims for appeal. *State v. Fordson*, 258 Ariz. 167, 171, ¶ 34 (App. 2024). We review Vanheemskerck's confrontation claim for fundamental error. *Escalante*, 245 Ariz. at 140, ¶ 12.

**¶26**        The Confrontation Clause prevents the prosecution from introducing testimonial statements by an unavailable declarant that the defendant did not previously cross-examine. *Ohio v. Clark*, 576 U.S. 237, 243 (2015). But the clause only applies to statements that are both hearsay and testimonial. *Smith v. Arizona*, 602 U.S. 779, 800 (2024).

**¶27**        The principal evidence of conspiracy offered here consisted of recorded calls and text messages. All such calls and messages involved statements by co-conspirators "during and in furtherance of the conspiracy," meaning they are, by rule, not hearsay. Ariz. R. Evid. 801(d)(2)(E). Beyond that, the statements were not offered to prove the truth of the matters asserted in them (i.e., the accuracy of each detail of each transaction). Rather, the State relied on them as circumstantial evidence to prove the overall conspiracy existed. *See State v. Chavez*, 225 Ariz. 442, 444, ¶ 9 (App. 2010). And the statements were not testimonial because those making the original statements were unaware of the recording and the statements were not "procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).

**¶28**        As non-hearsay, non-testimonial statements, the calls and texts themselves did not implicate the Confrontation Clause.

**¶29**        Vanheemskerck argues the court nonetheless violated the Confrontation Clause and other constitutional rights by allowing the substitute expert to testify about the calls and texts, and the related translation summaries of those communications. She notes that no verbatim transcripts were provided, the original translators were unavailable to testify to their summaries, and the testifying expert's independent review of the original calls occurred mid-trial.

**¶30**        To the extent that Vanheemskerck argues that the testifying expert injected a layer of hearsay by way of her testimony about the co-conspirators' statements, we disagree. Some jurisdictions apply the "language conduit theory" in circumstances like these, which rejects the argument that a translator is a separate declarant, and thus injects hearsay by testifying about translated statements. In other words, under this theory,

a reliable translator is merely a conduit of the statements at issue. *See United States v. Romo-Chavez*, 681 F.3d 955, 960–61 (9th Cir. 2012) (applying factors to establish translator's reliability). But even in jurisdictions that treat a translator as a separate declarant, there is no Confrontation Clause concern when the testifying translator conducted an independent evaluation of the translations and is subject to cross-examination. *See, e.g.*, *United States v. Curbelo*, 726 F.3d 1260, 1274–75 (11th Cir. 2013).

**¶31** The testifying supervisor here explained at length her own background, training, and experience. She testified extensively to the linguists' process of recording calls and texts and generating relevant summaries, and confirmed that she conducted an independent review of the recorded calls, texts, and their corresponding summaries. And she was subject to cross-examination on that testimony by Vanheemskerck's counsel. We discern no confrontation clause concern.

**¶32** Vanheemskerck's remaining constitutional arguments rest on the unavailability of the original translators who created the summaries and the court's ruling allowing the testifying expert to develop foundation for her testimony mid-trial by conducting an independent review of the calls and texts at issue. We note that the court redacted the summaries to remove all non-translation information provided by anyone other than the testifying expert, so neither the expert nor the evidence included potential hearsay by incorporating commentary from unavailable translators. This ameliorated any concerns from the unavailability of the initial translators.

**¶33** We are similarly not persuaded that the court erred by allowing the expert to conduct her independent review of the communications during trial. Vanheemskerck claims this impaired her ability to engage a responsive expert. But she does not contend she lacked pre-trial access to the evidence from which the expert testified, or that the expert's testimony confirming the accuracy of that evidence was a surprise. Even if the court's ruling was error, we discern no prejudice.

## IV. Mitigating Circumstances

**¶34** Vanheemskerck claims that because she played only a minor role in the conspiracy, the superior court should have considered this a mitigating factor, and not imposed an unfair, higher sentence than that of her co-defendants.

**¶35** The trial court has broad discretion to sentence defendants within statutory limits, so we review the sentence for abuse of discretion. *State v. Fillmore*, 187 Ariz. 174, 184 (App. 1996). We may find such abuse

when the sentencing decision was arbitrary or capricious or the court failed to adequately investigate the relevant facts. *Id.* at 184–185.

¶36        The court must consider all mitigating evidence presented but is under no obligation to agree that it warrants mitigation. *State v. Long*, 207 Ariz. 140, 148, ¶ 41 (App. 2004).

¶37        Here, the court explicitly considered both the aggravating circumstances found by the jury and the mitigating circumstances offered by Vanheemskerck. *See State v. Leslie*, 147 Ariz. 38, 50 (1985) (encouraging trial courts to state factors on the record along with reasons for accepting or rejecting them). The court then rejected Vanheemskerck's claim of her purported minor role, finding the evidence strongly suggested she was part of a larger operation that trafficked drugs into Mohave County. She solicited multiple ounces of methamphetamine—quantities far exceeding the quarter or half gram for individual use—and admitted to later reselling them, which supported that conclusion. The court thus properly exercised its discretion in declining to find mitigation.

¶38        Vanheemskerck also claims the sentence was improper relative to the other co-defendants. But a disparity in sentencing between co-defendants is mitigating only absent a reasonable explanation. *State v. Ellison*, 213 Ariz. 116, 140 (2006). Here, the court properly considered the two aggravating factors found by the jury and Vanheemskerck's historic prior felony conviction for drug sales. *See* A.R.S. § 13-701(D)(27) (allowing the court to consider any other factor relevant to defendant's character, background, or the nature or circumstances of the crime). Both subjected Vanheemskerck to a higher sentencing range. The other co-defendants' plea agreements made them eligible for reduced sentencing ranges. The disparity was reasonable.

## CONCLUSION

¶39        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR