SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| KERBY JAMES MCKANEY, | ) | Arizona Supreme Court |
| | ) | No. CV-04-0032-SA |
| Petitioner, | ) | |
| | ) | Maricopa County |
| v. | ) | Superior Court |
| | ) | No. CR 2001-011445 |
| HON. JOHN FOREMAN, JUDGE OF THE | ) | |
| SUPERIOR COURT, in and for the | ) | |
| County of Maricopa, | ) | |
| | ) | |
| Respondent, | ) | **O P I N I O N** |
| | ) | |
| | ) | |
| STATE OF ARIZONA, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

Special Action from the Superior Court of Maricopa County
The Honorable John Foreman, Judge
**JURISDICTION ACCEPTED**
**RELIEF DENIED; REMANDED**

_____

James J. Haas, Maricopa County Public Defender          Phoenix
       By    Vikki M. Liles, Deputy Public Defender
Attorneys for Petitioner


Richard M. Romley, Maricopa County Attorney          Phoenix
       By    Paul J. McMurdie, Deputy County Attorney
Attorneys for Real Party in Interest

_____

**J O N E S, Chief Justice**

¶1      In light of principles set forth by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), as well as the requirements of the Arizona Constitution and laws, we decide in today's case whether, as a condition to the pursuit of capital punishment by the State, aggravating factors described in A.R.S. § 13-703(F) (Supp. 2003) must be specifically alleged in the charging document and supported by evidence of probable cause. For the reasons set forth below, we hold they do not.

**I.**

¶2      Kerby McKaney was indicted August 2, 2001 on two counts of first degree murder, one count of first degree burglary, one count of sexual assault, and two counts of kidnapping.[1]  On October 1, 2001, the State gave notice of intent to seek the death penalty on the two murder charges, and on October 22, 2002, gave notice of intent to prove three aggravating factors, namely, prior conviction of a serious offense, offense committed in an especially heinous, cruel or depraved manner, and conviction of one or more other homicides. A.R.S. § 13-703(F)(2), (6) and (8).

---

[1]   The events giving rise to these charges were allegedly committed on December 8, 1985.  McKaney remained at large until a happenstance match of DNA evidence in *1999* linked him to the crimes.

2

¶3     On November 5, 2003, McKaney moved to dismiss the State's notice of intent and notice of aggravating factors, arguing that these factors are elements of the capital crime of first degree murder and as such were unsupported by an initial finding of probable cause by the grand jury. The trial court denied McKaney's motion on December 19, 2003. McKaney then filed this petition for special action. We accepted jurisdiction because the issue is applicable in every capital case initiated under Arizona's death penalty statutes and is thus of statewide significance. The issue is also one of first impression in this jurisdiction.

**II.**

¶4     McKaney's argument that the aggravating factors must be alleged in the indictment and supported by evidence of probable cause is based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article 2, Section 30, of the Arizona Constitution. In support, McKaney cites *Apprendi* and *Ring* as fashioning a new rule of law required by the United States and Arizona Constitutions.

**A.**

¶5     In *Apprendi*, the defendant, having fired gunshots into the home of an African-American family, pled guilty to two counts of possessing a firearm for an unlawful purpose, a second degree offense, and one count of unlawful possession of a

3

prohibited weapon, a third degree offense. 530 U.S. at 469-70. Each second degree count carried a maximum penalty of ten years in prison; the third degree count carried a five-year maximum penalty. *Id*. at 470. In addition, New Jersey's "hate crime" statute called for an enhanced sentence in cases in which the trial judge finds by a preponderance of the evidence that the offense was racially motivated. *Id*. at 468-69. A second degree offense under the hate crime statute carried an extended term of imprisonment "between 10 and 20 years." *Id*. at 469.

¶6     The trial judge found "that the crime was motivated by racial bias." *Id*. at 471. The judge sentenced Apprendi to an enhanced term of twelve years on one second degree offense and imposed shorter, concurrent sentences on the other counts. *Id*. at 471. The New Jersey Appellate Division and Supreme Court affirmed.

¶7     The United States Supreme Court granted certiorari and reversed, finding unconstitutional the procedure by which Apprendi's sentence was enhanced by the judge rather than by a jury. *Id*. at 474. The Court held (1) that a criminal defendant is entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt," *id*. at 477, and (2) that "other than the fact of a prior conviction, any fact that increases the penalty for a

4

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490.

¶8      The holdings in *Apprendi* greatly informed the Supreme Court's decision in *Ring* in which the Court held unconstitutional Arizona's capital sentencing scheme. Because Arizona law permitted the death penalty only when aggravating factors were established, the Court held that *Apprendi* and the Sixth Amendment on which *Apprendi* is based required the *jury* rather than the judge find those factors. *Ring*, 536 U.S. at 609. The Court, echoing *Apprendi*, stated, "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." *Id*. (citation omitted).

**B.**

¶9      In the aftermath of *Apprendi* and *Ring*, many jurisdictions faced the issue we now face, namely, whether principles announced in the two cases require that statutory aggravators which may subject a criminal defendant to capital punishment be specifically alleged in the grand jury indictment or other charging document and be supported by sufficient evidence of probable cause. The vast majority of state jurisdictions have held they do not, and we agree.

¶10     Both *Apprendi* and *Ring* are expressly grounded in the right to trial by an impartial jury under the Sixth Amendment to the United States Constitution.  The Court's key concern in those decisions was that a criminal defendant be afforded the full benefit of jury trial on all evidence, including aggravating factors, that could result in a sentence greater than the maximum prescribed for the offense charged.  The instant case, however, does not fall under the Sixth Amendment and does not present that issue.  Rather, McKaney argues that in addition to the *Apprendi/Ring* requirement that aggravators be found for sentencing purposes by the trial jury, he is also entitled to have each aggravating factor preliminarily considered by the grand jury or neutral arbiter and included by specific allegation as a probable cause finding in the charging document, either a grand jury indictment or an information.

¶11     The United States Constitution does not impose on the states the rule McKaney asserts.  Although prosecutions in the federal courts require, under the Fifth Amendment, that aggravators be alleged in an indictment and supported by probable cause, *United States v. Cotton*, 535 U.S. 625, 627 (2002), the same requirement is inapplicable to prosecutions in our state courts.  Two principal reasons are given.  First, the Fifth Amendment's guarantee of indictment by a grand jury, applicable solely to the federal government, is not subject to

6

the strictures of the Fourteenth Amendment. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("[T]he Due Process Clause . . . [of the Fourteenth Amendment] does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."). Because a state is not required, as a matter of federal constitutional law, to empanel grand juries for purposes of indictment, it would be anomalous for us to require, under the United States Constitution, that a grand jury determine probable cause as a basis for alleging aggravating factors. *See Hurtado v. California*, 110 U.S. 516, 538 (1884).

¶12 Second, *Apprendi* and *Ring* do not implicate the Fifth Amendment relative to the use of grand jury indictments in state courts but rather the Sixth Amendment right to trial by jury and the Fourteenth Amendment due process requirement. The two cases specifically disavow dealing with sufficiency of indictments.

¶13 Accordingly, the only federal mandate applicable to McKaney in the context of the instant case is the Fourteenth Amendment due process requirement that a defendant receive adequate notice of the charges against him. *See, e.g., Harris v. United States*, 536 U.S. 545 (2002) (noting, by comparison, that unlike the Fifth Amendment grand jury requirement which is inapplicable to the states, the Sixth Amendment notice requirement that defendants be informed of charges against them

7

does apply to the states through the Fourteenth Amendment Due Process Clause). In the instant case, McKaney does not contend, nor could he reasonably contend, that Arizona's rules of criminal procedure afford less than sufficient notice of aggravating factors in satisfaction of the Fourteenth Amendment due process requirement, or that he specifically did not receive fair and adequate notice.

## C.

¶14    The Arizona Constitution requires an "information or indictment" before a person can be prosecuted for a felony or misdemeanor. Ariz. Const. art. 2, § 30. This court has held, pursuant to state due process requirements, that a charging document must "fairly indicate[] the crime charged; state[] the essential elements of the alleged crime; and [be] sufficiently definite to apprise the defendant so that he can prepare his defense to the charge." *State v. Marquez*, 127 Ariz. 98, 101, 618 P.2d 592, 595 (1980) (quoting *State v. Suarez*, 106 Ariz. 62, 64, 470 P.2d 675, 677 (1970)). Similarly, the Arizona Rules of Criminal Procedure require that an "indictment or information shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged." Ariz. R. Crim. P. 13.2.

¶15    But even if proof of an aggravating factor, now defined as merely a new procedural rule in *Schriro v. Summerlin,*

8

___ U.S. ___, 124 S. Ct. 2519 (2004), is deemed to be the "functional equivalent" of an element of the offense of capital murder under the Sixth Amendment as stated in *Apprendi* and *Ring* and sufficient notice of crimes charged is otherwise present, no authority requires that aggravating factors be identified and treated as "essential elements of the alleged crime" for the purpose of inclusion in a grand jury indictment or information. The requirement remains unchanged that the state must give the defendant notice of its intention to seek capital punishment, Ariz. R. Crim. P. 15.1(i)(1),[2] as does the requirement that the state give the defendant notice of the aggravating factors it intends to prove, Ariz. R. Crim. P. 15.1(i)(2).[3]

¶16    It thus becomes irrelevant that aggravators are not specified in the indictment or information based on evidence of

---

[2]    Rule 15.1(i)(1) requires that "[t]he prosecutor, no later than 60 days after the arraignment in superior court, shall provide to the defendant notice of whether the prosecutor intends to seek the death penalty. This period may be extended for thirty days upon stipulation of counsel. Additional extensions may be granted upon motion of the state and approval of the court."

[3]    Rule 15.1(i)(2) requires that "[i]f the prosecutor files notice of intent to seek the death penalty, the prosecutor shall at the same time provide the defendant with a list of aggravating circumstances the state will rely on at the aggravation hearing in seeking the death penalty."

probable cause presented to a grand jury or magistrate[4] because the defendant will have been given ample notice under the Arizona Rules of Criminal Procedure, and the trial jury, the same jury that ultimately will determine guilt or innocence, will also determine whether the aggravating factors exist beyond a reasonable doubt.  Accordingly, even if aggravators are characterized as the "functional equivalent" of elements of the offense of capital murder as in *Apprendi/Ring*, the Sixth Amendment right to trial by jury is satisfied, and there appears no reason to require proof of aggravating factors under an unduly expanded and non-essential due process standard in determining the scope of the "information or indictment" clause of the Arizona Constitution.  Art. II, § 30.

¶17     All state jurisdictions with one exception have thus far held, as we hold today, that aggravating factors need not be specified or alleged in the indictment.  *See, e.g.*, *People v. McClain*, 799 N.E.2d 322, 336 (Ill. App. 3d 2003) (*Ring* does not require that aggravating factors be pled in a state court indictment); *Soto v. Commonwealth*, 2004 WL 867447, 3-4 (Ky. 2004) (*Ring* and *Apprendi* do not require that aggravating factors be pled in the indictment); *Stevens v. State*, 867 So. 2d 219, 227 (Miss. 2004) ("an indictment for capital murder puts a

---

[4]     If the State proceeds by information, the State must hold a "preliminary examination before a magistrate," unless the defendant waives this right.  Ariz. Const. art. 2, § 30.

10

defendant on sufficient notice that statutory aggravating factors will be used against him" even in light of *Apprendi* and *Ring*); *Primeaux v. State*, 88 P.3d 893, 899-900 ¶¶ 14-16 (Okla. Crim. App. 2004) (no requirement in *Ring* that aggravating factors be pled in the indictment so long as notice is given to defendant); *State v. Edwards*, 810 A.2d 226, 234 (R.I. 2002) (no constitutional requirement after *Apprendi* or *Ring* that aggravating factors be set forth in the indictment); *State v. Oatney*, 66 P.3d 475, 487 (Ore. 2003) (deliberateness as an aggravating factor need not be charged in the indictment even though a jury must make a finding of deliberateness at the end of the guilt phase in order for the defendant to be death penalty eligible).

¶18    New Jersey alone has adopted the position McKaney urges. The Supreme Court of New Jersey, in *State v. Fortin*, 843 A.2d 974 (N.J. 2004), held the state constitution "requires that aggravating factors be submitted to the grand jury and returned in an indictment." *Id.* at 1035. Under the New Jersey Constitution, "the State must present proof of every element of an offense to the grand jury and specify those elements in the indictment." *Id*. at 1027; *see* N.J. Const. art. 1, ¶ 8.

¶19    The New Jersey court noted that "[a]lthough we recognize that the Fifth Amendment right to indictment by a grand jury does not apply to the States, we have never construed

11

our grand jury provision under Article 1, Paragraph 8 as providing lesser protection than its federal analogue." 843 A.2d at 1035 (internal citations omitted). In light of *Apprendi* and *Ring*, the court reasoned that "[i]f aggravating factors and capital triggers are the functional equivalent of elements of capital murder pursuant to the Sixth Amendment's right to trial by jury, we see no reason to define them as something other than elements for purposes of the state constitutional right to a grand jury presentation." *Id*.

¶20    We choose not to adopt New Jersey's rationale. We conclude there is a difference between "elements" for purposes of the Sixth Amendment right to trial by jury and the "functional equivalent of an element" for purposes of finding a state constitutional right to have aggravating factors alleged in an indictment or information. In the former, the trial jury addresses the adequacy of proof of the actual elements of the crime and the presence of aggravators to determine the defendant's guilt or innocence and to fix the sentence. In the latter, we address simply the adequacy of notice. The difference is significant. Indeed, in this very case, the defendant does not claim the notice he received was inadequate.

¶21    Were we to follow New Jersey's *Fortin* decision, we would, as a result, expand the statutory role of the grand jury

12

as a matter of state constitutional law. As another court noted, such an expansion has consequences:

> Another concern raised by requiring the grand jury to determine aggravating factors in death penalty cases is whether the judge empaneling the grand jury would be required to conduct a voir dire so as to exclude any potential grand jurors who would be unable to fairly determine aggravating factors on account of conscientious objection to the death penalty. If so, there would be no counsel present to assist the empaneling judge as by definition there would as yet be no case. The chance that this voir dire could be conducted to the satisfaction of counsel named after the indictment is returned would, at best, be nil.

*United States v. Battle*, 264 F. Supp. 2d 1088, 1104 (N.D. Ga. 2003). The court in *Battle* further noted that it is standard practice for the trial jury to view the indictment. Thus, "the jury [would] view the claimed aggravating factors prior to determining whether the defendant is guilty of any crime . . . ." *Id*. The court observed that "while redactions arguably could be made for this purpose, why require adding something to the indictment which will often have to be redacted?" *Id*. The court recognized, and we agree, that such a disclosure to the trial jury would, in many instances, prove unduly prejudicial to the defendant.

¶22    Finally, and respectfully, we disagree with the rather dramatic assertion advanced by our dissenting colleagues that today's opinion, for the first time in history, affords less protection under the Arizona Constitution than the United States Constitution affords in its corresponding clause. First, as we

13

have noted earlier, the federal constitution's "corresponding clause" does not apply to the states and, as a result, affords no protection at all to McKaney or similarly situated defendants. The question before us is simply whether the Arizona Constitution requires that the State allege specific aggravators in a charging document. Arizona has never required that such factors be alleged in an indictment or information, so today's decision neither reduces nor minimizes a right previously afforded criminal defendants. Rather, today's opinion simply retains Arizona's long-accepted view that the protection afforded by our rules of criminal procedure fully satisfies due process requirements.

## III.

¶23    We therefore hold that aggravating factors essential to the imposition of a capital sentence need not be alleged in the grand jury indictment or the information in order to satisfy constitutional due process. Even though aggravating factors need not be specified in the charging document, an accused in the State of Arizona is accorded notice under the rules of criminal procedure that complies with constitutional requirements. In the case at bench, McKaney was notified of the State's intent to seek the death penalty and of the specific aggravating factors to be proved with ample time to prepare.

14

¶24     For the foregoing reasons, we accept jurisdiction of McKaney's petition for special action, but deny relief.  We remand the case to the superior court for further proceedings consistent with this opinion.

_____
                                Charles E. Jones
                                Chief Justice

CONCURRING:


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


**H U R W I T Z,** Justice, dissenting in part and concurring in part:

¶25     The Court today holds that the indictment clause of the Arizona Constitution, Article II, Section 30, provides *less* protection to our citizens than the corresponding clause in the federal constitution.  This is to my knowledge the first time that this Court has reached such a conclusion, and I cannot join it.  Nonetheless, for the reasons I describe in Section II below, I would decline petitioner's request for special action relief because he has an adequate remedy at law.

**I.**

¶26     Article II, Section 30 provides that "[n]o person shall be prosecuted criminally in any court of record for felony

15

or misdemeanor, otherwise than by information or indictment." The charging document, whether an indictment or information, provides the defendant with notice of the charges against him. It is therefore settled that the charging document must "state[] the essential elements of the alleged crime." *State v. Marquez*, 127 Ariz. 98, 101, 618 P.2d 592, 595 (1980) (quoting *State v. Suarez*, 106 Ariz. 62, 64, 470 P.2d 675, 677 (1970)).

¶27 After *Ring v. Arizona*, 536 U.S. 584 (2002), it can no longer be doubted that the aggravating circumstances required by Arizona law for the imposition of the death penalty are elements of the offense. *Id*. at 606-07 (holding that Sixth Amendment of jury trial applies when legislature adds an "element" to a criminal offense in response to Supreme Court's constitutional adjudication); *id*. at 609 (characterizing aggravating factors as "the functional equivalent of an element of a greater offense") (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000)); *Sattazhan v. Pennsylvania*, 537 U.S. 101, 111 (2003) (stating that "if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a defendant, that fact--no matter how the State labels it-- constitutes an element").

¶28 Because capital aggravating factors are elements of the offense for Sixth Amendment purposes, every federal court of appeals to have considered the issue has concluded that the

16

Fifth Amendment requires that they be alleged in an indictment. *See United States v. Lee*, 374 F.3d 637, 650-51 (8th Cir. 2004); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003). The federal Department of Justice apparently agrees. After *Ring*, the Department sought superseding indictments in all pending capital cases setting forth the alleged aggravating circumstances that would make the defendant eligible for the death penalty. *Robinson*, 367 F.3d at 284 n.6.

¶29 The majority correctly notes that the federal indictment clause does not apply to the states, and we therefore are not mandated by federal law to provide our citizens the same protections mandated by the Fifth Amendment. But as we noted only last year, while we are not bound by the federal courts' interpretation of a federal constitutional clause similar to a clause in the Arizona Constitution, at the very least "those interpretations have great weight in accomplishing the desired uniformity between the clauses." *State v. Casey*, 205 Ariz. 359, 362 ¶ 11, 71 P.3d 351, 354 (2003). More importantly, in construing our Constitution, we properly begin from the premise that federal constitutional law is "the benchmark of minimum constitutional protection." *Large v. Superior Court*, 148 Ariz. 229, 235, 714 P.2d 399, 405 (1986). We have occasionally found our Constitution to provide broader protections to our citizens

17

than afforded by analogous clauses in the federal document, *e.g., Pool v. Superior Court*, 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984), but we have never interpreted the protections of our fundamental document as narrower than those in the national charter.

¶**30** As several distinguished commentators have noted, there may often be compelling reasons to read provisions of the Arizona Constitution differently than their federal counterparts. *See, e.g.*, Ruth V. McGregor, *Recent Developments in Arizona State Constitutional Law*, 35 Ariz. St. L. J. 265 (2003); Stanley G. Feldman and David L. Abney, *The Double Security of Federalism: Protecting Individual Liberty Under the Arizona Constitution*, 20 Ariz. St. L. J. 115 (1988). But no such reasons are present here. The pertinent language in the Fifth Amendment is analytically indistinguishable from the language in Article II, Section 30. Nor is there any suggestion that the framers of the state constitution believed that the scope of the Arizona provision differed in any material way from the federal. For these reasons, our previous decisions have generally relied upon federal jurisprudence when explaining the Arizona indictment clause. *See, e.g.*, *Maretick v. Jarrett*, 204 Ariz. 194, 197 ¶ 8, 62 P.3d 120, 123 (2003) (quoting *Wood v. Georgia*, 370 U.S. 375, 390 (1962) in describing the purposes of a grand jury).

¶31 The Court's conclusion today that Article II, Section 30 is not congruent with the Fifth Amendment rests entirely on the notion that the notice of alleged aggravating circumstances provided to defendants under Arizona Rule of Criminal Procedure 15.1(i)(1) satisfies due process requirements. *See* Ariz. R. Crim. P. 13.5(c) (providing that the filing of such a list amends the charging document). I do not doubt that the list of aggravating circumstances, which must be served on the defendant no later than sixty days after arraignment in superior court, provides the defendant with ample notice of these elements for due process purposes. Our indictment clause, however, was intended not only to provide a defendant with notice of the charges, but also to ensure that a neutral intermediary – a grand jury comprised of ordinary citizens – finds that probable cause exists *before* the State can bring charges. *See State v. Baumann*, 125 Ariz. 404, 408, 610 P.2d 38, 42 (1980); *State v. Superior Court* (*Mauro*), 139 Ariz. 422, 424, 678 P.2d 1386, 1388 (1984). Arizona grand juries, like their federal counterparts, were thus designed to act as a "vital check against the wrongful exercise of power by the State and its prosecutors." *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998).[5] *See Maretick*, 204 Ariz.

---

[5] The State may, of course, choose to proceed under Article II, Section 30 by way of information rather than indictment. But if it does so, the defendant has the right to a preliminary hearing, where a neutral magistrate will determine if there is probable cause to proceed. *See* Ariz. R. Crim. P. 5.4(a); *State*

19

at 197 ¶ 8, 62 P.3d at 123 (describing grand jury as "serv[ing] the invaluable function in our society of standing between the accuser and the accused").

¶32     Under today's decision, this constitutional protection is effectively eviscerated.  The Court has interpreted our Constitution as allowing the State, and the State alone, to decide whether there is probable cause to charge the aggravating circumstances that put a defendant in peril of capital punishment.  We would not countenance such a result in other areas.  For example, it is unthinkable that we would allow the State, after obtaining from a grand jury an indictment charging a defendant with simple assault, to unilaterally amend the indictment to allege aggravated assault.  Yet that is what Rules 15.1(i)(1) and 13.5(c) allow; they permit the State alone to decide that there is probable cause to add an element to a charge of first-degree murder so as to expose a defendant to an aggravated sentence.

¶33     There would be little cost to law enforcement if our Constitution, like its federal counterpart, were read to require that aggravating circumstances be part of the indictment issued by the grand jury.  For pending cases, superseding indictments

_____

*v. Superior Court* (*Atwood*), 103 Ariz. 369, 372, 442 P.2d 113, 116 (Ariz. 1968); *State v. Neese*, 126 Ariz. 499, 502-03, 616 P.2d 959, 962-63 (App. 1980) ("The purpose of a preliminary hearing and a grand jury proceeding is the same.  They are to

could be sought and obtained in accordance with the federal practice. For all cases already tried, any failure to have included the aggravating circumstances in the indictment is almost surely harmless error. A defendant who received the notice required by Rule 15.1(i)(1) or its predecessor will have had sufficient warning for due process purposes of the charges against him. And, after a jury of a defendant's peers returns a verdict of conviction, thus finding all elements of the offense beyond a reasonable doubt, any failure to have submitted an element to the grand jury for a finding of probable cause is perforce harmless error. *United States v. Mechanik*, 475 U.S. 66, 73 (1986).

¶34    In short, there is no warrant, either in settled doctrines of constitutional interpretation or in practical terms, for the Court's conclusion today that Article II, Section 30 has less content than the Fifth Amendment to the United States Constitution. Because I cannot subscribe to the premise that the Arizona Constitution is not at least as generous in its protections of individual rights as the federal constitution, I cannot join the Court's opinion.

## II.

¶35    The case today before us arrives by way of a petition for special action. "The special action requests extraordinary

---

determine whether there is probable cause to believe the

21

relief, and acceptance of jurisdiction of a special action is highly discretionary with the court to which the application is made."  State Bar Committee Note, Ariz. R.P. Spec. Act. 3. Before granting such extraordinary relief, we should be satisfied that the petitioner has no other equally adequate and speedy remedy.  Ariz. R.P. Spec. Act. 1(a); *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 252 ¶ 3, 63 P.3d 282, 283 (2003).

¶**36**      In this case, petitioner has such a remedy.  As the Court accurately holds, he cannot complain that he has not received sufficient notice for due process purposes of the alleged aggravating circumstances.  His real complaint, as I note above, is that the State has alleged these elements of the offense without a finding of probable cause by the grand jury. Rule 13.5(c), however, gives the defendant an ample remedy for that oversight:  he may, through the vehicle of a pre-trial Rule 16 motion, "challenge the legal sufficiency of an alleged aggravating circumstance."

¶**37**      Under the Rule 13.5(c) procedure, a defendant claiming that there was no probable cause to support an alleged aggravator alleged under Rule 15.1(i)(1) is entitled to a determination by a neutral magistrate – a superior court judge – of the "legal sufficiency" of that aggravator.[6]  By filing a

_____

individual committed an offense.").
[6]    It is technically possible to read Rule 13.5(c) as limiting the defendant to a claim that the alleged aggravating

motion under Rule 13.5(c), a defendant can obtain protection against arbitrary state action equivalent to that which he would have received had the State submitted the aggravator to a grand jury, and identical to that which he would have received had the State chosen to proceed by way of information alleging the aggravating circumstances.

¶38     Because petitioner's trial has not yet commenced, he may still file a motion "pursuant to Rule 16" if he wishes a neutral determination as to whether the aggravating circumstances alleged by the State are based upon probable cause.  Given the availability of this remedy, I concur in the Court's judgment insofar as it denies petitioner special action relief.


_____
                                        Andrew D. Hurwitz, Justice

CONCURRING:


_____
Michael D. Ryan, Justice

_____
circumstance was not listed under A.R.S. § 13-703(F) and is thus facially legally insufficient.  That reading, however, is inconsistent with the notion, set forth in the comment to the Rule, that a defendant's rights to challenge the aggravating circumstances alleged are waived if not raised before trial. Surely this Court would not countenance the execution of a defendant based on an aggravating circumstance not listed in § 13-703(F).  The Rule therefore must pertain to more than facial "legal sufficiency," i.e., the probable cause for the allegation of the aggravator.